**UNITED STATES of America,
Plaintiff–Appellant,**

v.

**Gilberto REDONDO–LEMOS,
Defendant–Appellee.**

**No. 90–10430.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 9, 1991.

Decided Feb. 5, 1992.

As Amended on Denial of Rehearing
and Rehearing En Banc
May 11, 1992.

Linda A. Akers, U.S. Atty., D. Ariz., Phoenix, Ariz., and Joseph C. Wyderko, U.S. Dept. of Justice, Washington, D.C., for plaintiff-appellant.

Fernando X. Gaxiola, Tucson, Ariz., for defendant-appellee.

Before CANBY, and KOZINSKI, Circuit Judges, and WM. FREMMING NIELSEN, District Judge.[*]

KOZINSKI, Circuit Judge.

Defendant Redondo–Lemos pled guilty to an offense which carries a statutory minimum sentence of 5 years. The district court nevertheless sentenced him to 18 months, based on a finding that the Office of the United States Attorney acted arbitrarily and discriminated on the basis of gender in plea bargaining with this defendant. We must decide whether the district court may so second-guess the United States Attorney's exercise of prosecutorial discretion. We answer unequivocally: yes and no.

## Facts

Gilberto Redondo–Lemos was caught transporting 695 pounds of marijuana into the United States from Mexico and was charged for possession with the intent to distribute marijuana in violation of 21 USC § 841(a)(1). In exchange for a guilty plea, the government promised to recommend that the district court impose only the mandatory minimum sentence of 5 years' imprisonment. *See* 21 USC § 841(b)(1)(B).

The government fulfilled its part of the deal and the defendant seemed resigned to his fate. The district court, however, expressed doubt whether the United States Attorney's Office was treating Redondo–Lemos the same as other similarly situated defendants. The court then sentenced Redondo–Lemos to 18 months.

The district court subsequently explained its reasoning in a memorandum. To impose a harsher sentence on Redondo–Lemos would deny him equal protection and due process, the court concluded, because the United States Attorney for the District of Arizona was enforcing the drug laws in a manner that was both quirky and favor-

[*] The Honorable Wm. Fremming Nielsen, United States District Judge, Eastern District of Washington, sitting by designation.

able to female defendants. The United States appeals.

## Discussion

### I

■ The government argues initially that the district court had no authority to second-guess Redondo–Lemos's plea bargain because the defendant did not challenge it. In the government's view, district judges in this situation may act only in response to an objection raised by the defendant; courts step beyond their proper role—and transgress the bounds of seemliness—when they undertake a sua sponte inquiry into the methods and motives of the prosecutor.

We emphatically reject this argument. "The task of safeguarding the rights of criminal defendants ultimately rests with the experienced men and women who preside in our district courts." *United States v. Balough,* 820 F.2d 1485, 1491 (9th Cir. 1987). That a district judge's responsibility does not end when he rules on objections and motions raised by the parties is recognized by the doctrine of plain error, which embodies the notion that there are some errors that are so prejudicial and obvious the district judges must remedy them even without an objection.[1]

■ Where a district judge detects what he suspects may be an error seriously affecting the rights of a criminal defendant, he must address the problem. This duty exists at all times, but never more so than when the problem is such that it is unlikely to be detected by an individual defendant. The matter that gave the district judge pause here—his suspicion that the United States Attorney was engaging in unconstitutionally selective prosecution—can rarely be identified based on a single case. A district judge who perceives a pattern of invidious enforcement has ample authority under the court's supervisory powers to raise the matter sua sponte. *See United States v. Simpson,* 927 F.2d 1088, 1090–91 (9th Cir.1991). While we disapprove of the

manner in which the district judge handled the issue after he identified the problem, *see* pages 1302–03 *infra,* we commend his alertness and initiative in addressing a practice he had reason to believe impaired the fundamental fairness of the proceedings before him.

### II

The district court's sentencing order purports to give the defendant the benefit of a plea bargain he never made. The court selected this as a remedy for what it viewed as an unconstitutional abuse of discretion by prosecutors who were improperly discriminating among similarly situated defendants, giving some a break that others were denied. The court identified two independent defects in the United States Attorney's charging and plea bargaining decisions. First, the court determined that among defendants who were equally culpable—a class consisting of drug runners (or mules) whose only involvement in the illegal enterprise was to haul drugs across the border for a relatively small sum—the Office of the United States Attorney arbitrarily selected those with whom it made sweetheart deals and those others with whom it dealt far more harshly. Second, the court concluded that the government was much more likely to give female mules the benefit of a favorable plea bargain than male mules.

Mules seldom have a viable defense, generally having been corralled red-hoofed with large quantities of illegal drugs at or near the border. Because serious drug trafficking crimes often carry mandatory minimum sentences, the crime with which the mules are charged normally determines the punishment they will suffer. As a practical matter, then, the charging decision winds up being the *only* decision that matters. In Judge Marquez's view, so sweeping a power over the life and liberty of individual defendants may not be exercised by the United States Attorney in an arbitrary or invidious manner.

■ A. We agree with the district court's conclusion that governmental decisions which have a profound effect on the

---

**1.** *See United States v. Olano,* 934 F.2d 1425, 1439 n. 23 (9th Cir.1991); *United States v. Hernandez–Escarsega,* 886 F.2d 1560, 1573 (9th Cir. 1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3237, 111 L.Ed.2d 748 (1990); *United States v. Bustillo,* 789 F.2d 1364, 1367–68 (9th Cir.1986).

life and freedom of individuals must conform to the constitutional requirement of due process. *See Sierra Lake Reserve v. City of Rocklin,* 938 F.2d 951, 957–58 (9th Cir.1991). Given the significance of the prosecutor's charging and plea bargaining decisions, it would offend common notions of justice to have them made on the basis of a dart throw, a coin toss or some other arbitrary or capricious process. *See Sinaloa Lake Owners Ass'n v. City of Simi Valley,* 882 F.2d 1398, 1407–10 (9th Cir. 1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1317, 108 L.Ed.2d 493 (1990). It seems self-evident that decisions of such profound significance cannot be placed beyond constitutional constraints.

■ In most circumstances, of course, to say that there is a constitutional right is also to say that there is a judicially enforceable remedy. *See Azul Pacifico, Inc. v. City of Los Angeles,* 948 F.2d 575, 586–87 (9th Cir.1991). But not always.[2] The judicial branch is not the only one charged with enforcing the Constitution of the United States. The President and Congress, and all of the subordinate employees within their respective branches, have a solemn responsibility to comply with the Constitution in the performance of their assigned functions. This responsibility is derived directly from the Constitution and is reinforced by the oath of office administered to every government employee before he enters on duty. 5 USC § 3331. When no judicial remedy is available to enforce constitutional strictures, we must rely on the diligence and good faith of the officials of the other branches to avoid constitutional violations.

Prosecutorial charging and plea bargaining decisions are particularly ill-suited for broad judicial oversight. In the first place,

they involve exercises of judgment and discretion that are often difficult to articulate in a manner suitable for judicial evaluation. *See Dorfmont v. Brown,* 913 F.2d 1399, 1401 (9th Cir.1990) (cautioning against judicial review of executive decisions that are based on considerations beyond judicial expertise), *cert. denied,* —— U.S. ——, 111 S.Ct. 1104, 113 L.Ed.2d 214 (1991). Such decisions are normally made as a result of careful professional judgment as to the strength of the evidence, the availability of resources, the visibility of the crime and the likely deterrent effect on the particular defendant and others similarly situated.[3] Even were it able to collect, understand and balance all of these factors, a court would find it nearly impossible to lay down guidelines to be followed by prosecutors in future cases. We would be left with prosecutors not knowing when to prosecute and judges not having time to judge.

Assuming these problems of guidance and understanding could be overcome—and it is unlikely that they could be—there is an added constitutional consideration based on the peculiar relationship between the Office of the United States Attorney and the federal district courts: The United States is necessarily a party to every criminal case presented to a district court. It would raise serious separation of powers questions—as well as a host of virtually insurmountable practical problems—for the district court to inquire into and supervise the inner workings of the United States Attorney's Office. *Cf. Simpson,* 927 F.2d at 1091 ("The doctrine of separation of powers requires judicial respect for the independence of the prosecutor.").

The very breadth of the inquiry—whether the prosecutor's discretion was exercised in an arbitrary or capricious fashion—would require that the government divulge

---

**2.** *See Will v. Michigan Dep't of State Police,* 491 U.S. 58, 64–65, 109 S.Ct. 2304, 2308–09, 105 L.Ed.2d 45 (1989) (state sovereign immunity); *Bush v. Lucas,* 462 U.S. 367, 388–90, 103 S.Ct. 2404, 2416–18, 76 L.Ed.2d 648 (1983) (statutory foreclosure of *Bivens* actions); *Baker v. Carr,* 369 U.S. 186, 217, 82 S.Ct. 691, 710, 7 L.Ed.2d 663 (1962) (political question); *see also Goldwater v. Carter,* 444 U.S. 996, 1003–04, 100 S.Ct. 533, 537–38, 62 L.Ed.2d 428 (1979) (concurrence) (political question).

**3.** *See Wayte v. United States,* 470 U.S. 598, 607–08, 105 S.Ct. 1524, 1530–31, 84 L.Ed.2d 547 (1985); *Inmates of Attica Correctional Facility v. Rockefeller,* 477 F.2d 375, 379–80 (2d Cir.1973); *Newman v. United States,* 382 F.2d 479, 480 (D.C.Cir.1967); Reiss, *Prosecutorial Intent in Constitutional Criminal Procedure,* 135 U.Pa. L.Rev. 1365, 1373 (1987); Vorenberg, *Decent Restraint of Prosecutorial Power,* 94 Harv.L.Rev. 1521, 1547 (1981).

minute details about the process by which scores, perhaps hundreds, of charging decisions are made. The court would also have to consider the validity of various rationales advanced for particular charging decisions, which would enmesh it deeply into the policies, practices and procedures of the United States Attorney's Office.[4] Finally, the court would have to second-guess the prosecutor's judgment in a variety of cases to determine whether the reasons advanced therefor are a subterfuge.

Such judicial entanglement in the core decisions of another branch of government—especially as to those bearing directly and substantially on matters litigated in federal court—is inconsistent with the division of responsibilities assigned to each branch by the Constitution. The Office of the United States Attorney cannot function as prosecutor before the court while also serving under its general supervision. The court, in turn, cannot both supervise the exercise of prosecutorial discretion and act as an impartial arbiter of the cases presented to it. In the end, the type of intense inquiry that would enable a court to evaluate whether or not a prosecutor's charging decision was made in an arbitrary fashion would destroy the very system of justice it was intended to protect.

Our only available course is to deny the defendant a judicial remedy for what may be a violation of a constitutional right—not to have charging or plea bargaining decisions made in an arbitrary or capricious manner. *See Dorfmont,* 913 F.2d at 1405 (concurrence) (noting that some governmental decisions are not subject to judicial review).[5] We trust that the United States Attorney for the District of Arizona and the Attorney General of the United States will give due consideration to Judge Marquez's observations and take whatever steps may be necessary to eliminate any constitutional infirmities in the charging process for this case and others.[6]

■ B. A problem of a different order is presented by the district court's observation that the United States Attorney's Office discriminated on the basis of gender in exercising its prosecutorial discretion. A claim of sex discrimination (or discrimination based on race, religion, or a similar characteristic) raises not only due process but also equal protection concerns. Troublesome as may be suspicions that prosecutorial discretion is being exercised in an arbitrary fashion, such concerns are heightened to an unacceptable level where there is an indication that the power to prosecute is being exercised to favor (or disfavor) particular classes of defendants on the basis of race, religion, gender, or similar suspect characteristics. The use of governmental authority to divide the population along suspect lines is a much more serious

---

4. The interference with executive processes stems in large part from the confidential nature of prosecutorial decisions; any inquiry that would establish (or disprove) a due process violation would have to pierce that veil of secrecy. The confidential nature of the charging process serves important institutional functions, such as increasing general deterrence by preventing the public from knowing which crimes will be given emphasis in enforcement. *See Wayte,* 470 U.S. at 607, 105 S.Ct. at 1530; Abrams, *Internal Policy: Guiding the Exercise of Prosecutorial Discretion,* 19 UCLA L.Rev. 1, 29–31 (1971); Frase, *The Decision to File Federal Criminal Charges: A Quantitative Study of Prosecutorial Discretion,* 47 U.Chi.L.Rev. 246, 282 (1980). Confidentiality also permits prosecutors to employ flexible, multifaceted enforcement policies; disclosure, on the other hand, promotes inflexible, static policies. *See* Abrams, *supra,* at 32–33; Frase, *supra,* at 297.

5. This is assuming, of course, that the prosecutor has probable cause to prosecute the accused for the offense charged. *Wayte,* 470 U.S. at 607, 105 S.Ct. at 1530; *United States v. Sanchez,* 908 F.2d 1443, 1445 (9th Cir.1990). Redondo–Lemos has made no claim that the United States Attorney lacked probable cause to prosecute him for violating 21 USC § 841(a)(1), (b)(1)(B).

6. Judge Canby suggests that we need not decide whether a claim of arbitrarily selective prosecution is judicially cognizable because there has not been a prima facie showing of arbitrary prosecution. However, as we note elsewhere, this is not the usual case where the district court has rejected a defendant's prima facie showing. Rather, the court found violations of due process and equal protection on the basis of its own observations. Judge Canby joins in our holding that a district court's sua sponte finding of gender discrimination is tantamount to a prima facie showing of selective prosecution, even though it is based on evidence insufficient to satisfy a defendant's prima facie burden. *See* page 1302 *infra.* We fail to see why the district court's finding of gender discrimination is sufficient to establish a prima facie case but its

matter than the capricious exercise of power standing alone.[7]

Of equal importance, it is judicially far more manageable to determine whether prosecutorial discretion is being exercised in a discriminatory fashion than to determine whether prosecutions are being selected arbitrarily or capriciously. At a threshold level, whether or not there is a significant disparity in the treatment of classes of defendants can normally be determined on the basis of statistical evidence, without reference to the underlying facts of individual cases. If a disparity is found, the district court may well be able to resolve the matter so as to minimize, or avoid altogether, any inquiry into the intricacies of particular charging decisions. The court's entanglement with and supervision of the prosecutorial function can, in the exercise of sound judicial discretion, be kept to a minimum.

It is in light of these considerations that the Supreme Court has concluded that courts do indeed have the authority to inquire into charging and plea bargaining decisions to determine whether the prosecutor is abusing her awesome power to favor or disfavor groups defined by their gender, race, religion or similar characteristics.[8] Even under these circumstances, however, the district court's authority to remedy apparently unconstitutional conduct is limited. It is not enough for the court to be convinced that the prosecutor's enforcement decisions have a discriminatory effect; it must also find that the prosecutor was motivated by a discriminatory purpose in the very case before it.[9]

### III

While the district court had authority to consider whether the United States Attorney exercised her discretion in a gender-neutral fashion, we cannot approve of the manner in which the district court exercised that authority. That the district judge had observed what he believed to be a disparity in the prosecutor's plea bargaining practice provides an insufficient basis for finding invidious discrimination. The district court's own observations can, at best, establish a prima facie case. To establish purposeful discrimination as a matter of fact, the district court must find an intent to discriminate on the part of the prosecutor. Such a finding must be made on the basis of a properly noticed evidentiary hearing where all affected parties have an opportunity to present evidence and otherwise participate.

A. Because we must remand this case on the issue of gender discrimination, and because other such cases may arise in the future, we take the opportunity to offer guidance on how the district court should

---

finding of arbitrarily selective prosecution is not.

7. See Batson v. Kentucky, 476 U.S. 79, 87–88, 106 S.Ct. 1712, 1718–1719, 90 L.Ed.2d 69 (1986); Bolling v. Sharpe, 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954); United States v. Carolene Prods. Co., 304 U.S. 144, 152 n. 4, 58 S.Ct. 778, 783 n. 4, 82 L.Ed. 1234 (1938); see also K. Karst, Belonging to America 21–27 (1989) (detailing the stigmatizing and alienating effects of discrimination which magnify its infringement on personal rights).

8. See Wayte, 470 U.S. at 608, 105 S.Ct. at 1531; Bordenkircher v. Hayes, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978); Oyler v. Boles, 368 U.S. 448, 456, 82 S.Ct. 501, 505, 7 L.Ed.2d 446 (1962).

 The Department of Justice does not challenge this line of authority. Indeed, counsel for the government acknowledged that a court can take remedial action if it has definite proof that "there was selective prosecution on the basis of a constitutionally impermissible factor, such as race or sex or religion." Asked how a court is to collect such evidence, counsel stated that, if a threshold showing of discrimination is made, a court can hold an evidentiary hearing to gather additional evidence. Tape of Oral Argument Before the Ninth Circuit, United States v. Redondo–Lemos, Nos. 90–10430 & 90–10450 (Sept. 9, 1991) (statement of Department of Justice Attorney Joseph C. Wyderko).

9. See Wayte, 470 U.S. at 608–09, 105 S.Ct. at 1531–32; United States v. Kidder, 869 F.2d 1328, 1336 (9th Cir.1989); United States v. Moody, 778 F.2d 1380, 1386 (9th Cir.1985), amended on other grounds, 791 F.2d 707 (9th Cir.1986).

 Inquiry into prosecutorial affairs is allowed to pursue claims of selective prosecution based on suspect characteristics, but not those based on arbitrariness, because in the former case the inquiry is likely to be less intrusive and the violation more offensive. Judge Canby's concurrence, by focusing solely on the fact that some inquiries into arbitrariness may be no less intrusive than some inquiries into suspect class discrimination, ignores the added consideration

handle proceedings in this most sensitive area. The presumption, of course, is that a coordinate branch of government will exercise its authority in a constitutionally appropriate fashion. No one is entitled to call the prosecution to answer for a particular charging or plea bargaining decision without making a prima facie showing that wrongful discrimination is probably taking place.[10] Where, as here, the district court develops a suspicion of unconstitutional conduct on the basis of its own day-to-day observations, this will be deemed a sufficient prima facie showing. In cases where the defendant first raises a claim of selective prosecution, he must present enough evidence to demonstrate a reasonable inference of invidious discrimination.[11] The point, of course, is that the district court should refrain from meddling in the affairs of the executive branch unless it has good reason to believe that something is amiss.

Once a showing of purposeful discrimination has been made to the district court's satisfaction, the Office of the United States Attorney must be given an opportunity to present evidence rebutting the prima facie case. The sampling of cases before a particular judge may not reflect the overall statistics in the office, or the judge may believe there is a disparity that does not materialize upon closer, analytical examination. The United States Attorney must be given the chance to make whatever showing she deems appropriate to dispel the district judge's concerns. We anticipate that any such showing—at least at this initial stage—would not involve file information about specific cases, but consist only of overall case statistics. Such statistics would have to be presented so as to enable opposing counsel to understand and analyze them, and the district court to make a meaningful judgment. While certain aspects of the prosecutor's evidentiary presentation may be made in camera to

protect the integrity of case files, enough information must be disclosed to the opposing counsel to enable him to respond and, if appropriate, object. *See United States v. Thompson,* 827 F.2d 1254, 1259 (9th Cir. 1987).[12]

If the district court is satisfied by the prosecutor's showing, that is the end of the matter. If, however, the district court finds by a preponderance of the evidence that the prosecutor's charging or plea bargaining practice has a discriminatory impact, it must next determine whether the prosecutor was motivated by a discriminatory purpose in charging the defendant who is before the court. This may, in rare instances, extend to in camera examination of certain prosecution case files and to limited discovery by opposing counsel. Any such inquiry must, however, be viewed as extraordinary and should be undertaken only if the district court continues to harbor serious doubts as to whether prosecutorial decisions are being made in a discriminatory fashion. In exercising this authority, the district court must be ever mindful that it is intruding upon the workings of a coordinate branch of government and must take all appropriate steps to minimize the intrusion. If, after giving the government ample opportunity to present its side of the case, the district court finds by a preponderance of the evidence that there has been intentional discrimination on the basis of a suspect classification, it may then fashion a remedy to address the constitutional violation.

 B. Were the district court to find on remand that the Office of the United States Attorney engaged in unconstitutional selective prosecution, the remedy it has already chosen—giving the defendant the benefit of the plea bargain he would have received but for the discrimination—is an

---

that suspect class discrimination is more offensive, and hence less tolerable.

**10.** *See United States v. Wayte,* 710 F.2d 1385, 1387–88 (9th Cir.1983), *aff'd,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985); *United States v. Hazel,* 696 F.2d 473, 475 (6th Cir.1983); *United States v. Berrios,* 501 F.2d 1207, 1211–12 (2d Cir.1974).

**11.** *See* cases cited in note 7 *supra.*

**12.** *See also* Note, *Defense Presence and Participation: A Procedural Minimum for Batson v. Kentucky Hearings,* 99 Yale L.J. 187, 197–205 (1989). Once the defendant has made a prima facie showing of wrongful discrimination, he may be allowed limited discovery in appropriate circumstances prior to the prosecutor's evidentiary presentation. *See Wayte,* 710 F.2d at 1388; *United States v. Ness,* 652 F.2d 890, 892 (9th Cir.), *cert. denied,* 454 U.S. 1126, 102 S.Ct. 976, 71 L.Ed.2d 113 (1981).

appropriate method of curing the violation. *See* page 1298 *supra.* We caution, however, against broader, systemic remedies following a district court finding of selective prosecution. Systemic relief in this area threatens to involve the district courts in the type of prosecutorial oversight which is fraught with separation of powers pitfalls.[13] We do not address whether such systemic remedies are ever appropriate.

### Conclusion

We again emphasize the extreme sensitivity of the matter involved and urge the greatest restraint on the part of the district court in conducting its inquiry. All precautions must be taken to minimize the friction that will naturally arise when one branch of government undertakes to second-guess the discretionary acts of another. Nevertheless, once a prima facie showing of gender-based discrimination is made, as we deem occurred here, the inquiry must be pursued.

We reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED.

CANBY, Circuit Judge, concurring:

I join all of Judge Kozinski's well-written opinion except Section A of Division II, dealing with the asserted violation of due process. Even there, I agree with the result and with much that Judge Kozinski says about the delicacy and difficulty attending judicial inquiry into prosecutorial decision-making.

My disagreement is with Judge Kozinski's categorical conclusion that there can be no judicial enforcement of the constitutional right of due process with regard to prosecutorial charging decisions. Judge Kozinski indicates that, if the prosecutor adopted an office procedure of selecting charges by the throw of a dart or a toss of the coin, such arbitrariness would violate the due process clause. He then concludes,

if I read his opinion correctly, that even in such an extreme case there could be no judicial remedy because of considerations of separation of powers.

There is no call to make such a categorical pronouncement in this case. Although the district court had sufficient information to support further inquiry into an equal protection violation, it had no comparable evidence of a due process violation. The fact that some defendants had been allowed to "plead around" mandatory minimum sentences, while others had not, is insufficient to make a prima facie case of due process violation. *United States v. Kidder,* 869 F.2d 1328, 1335–36 (9th Cir. 1989). Further due process inquiry is precluded for that reason. It is unnecessary to go further and proclaim that there can *never* be a due process inquiry into the internal charging decisions of the prosecution, no matter what kind of showing is made of an egregious violation.[1]

It is certainly true that there are constitutional and practical reasons for avoiding systematic judicial scrutiny of prosecutorial decisions. I do not understand, however, why the separation of powers precludes judicial inquiry under the rubric of due process when it does not preclude similar inquiry under the rubric of equal protection. Judge Kozinski is willing in rare instances, after a prima facie case has been sustained, to permit in camera inspection of prosecutorial files to determine whether a charging decision was based on gender bias. Why is such an inquiry less of an intrusion than a similar inquiry, in even rarer instances, when a prima facie case of due process violation has been sustained?

Perhaps part of Judge Kozinski's point is that the occasions when equal protection inquiry is justified are more easily identified than comparable occasions of suspected due process violation. That fact, however, simply makes it harder for defen-

---

**13.** *Cf. United States v. Miller,* 722 F.2d 562, 565 (9th Cir.1983): "[S]eparation of powers requires that the judiciary remain independent of executive affairs.... [Courts] should avoid creating broad rules that limit the traditional prosecutorial independence. Generally, courts should be wary of second-guessing prosecutorial choices."

**1.** I do not read *Wayte v. United States,* 470 U.S. 598, 105 S.Ct. 1524, 84 L.Ed.2d 547 (1985), as laying down such a categorical rule. *Wayte* challenged the government policy of selecting for prosecution only those who had written letters to the government stating that they would not register for the draft. The Court stated: "It

dants and judges to make out or discover a prima facie case of due process violation. I do not object to keeping the barriers to such inquiry high; but I see no reason to declare due process violations totally out of bounds for the judiciary. The separation of powers is a fundamental constitutional concept, but so is due process of law.

is appropriate to judge selective prosecution claims according to ordinary equal protection standards." *Id.* at 608, 105 S.Ct. at 1531. It was certainly appropriate in *Wayte,* as it will be in almost all cases where prosecution is based on an action or characteristic of the person prosecuted. The Court did not say, as the majority opinion does here, that in a case of pure arbitrariness, such as a coin toss decision, due process inquiry would be precluded.