28 F.3d 110
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellant,
v.
Melody Rochelle SINGLETON, Defendant-Appellee.
 No. 93-30098.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Dec. 15, 1993.
Submission Vacated Jan. 24, 1994.
Resubmitted June 14, 1994.
Decided June 24, 1994.
 
 Before: BROWNING, NORRIS, and O'SCANNLAIN, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 The United States appeals the sentence the district court imposed upon the defendant, a black woman, in this case. We vacate defendant's sentence and remand so that the district court may hold an evidentiary hearing to determine if the government's decision not to recommend a downward departure in defendant's particular case was racially motivated.
 
 BACKGROUND
 
 3
 At Singleton's sentencing hearing on July 10, 1992, the district court informed the parties that it lacked sufficient information to sentence the defendant. It observed, sua sponte, that the defendant appeared to have been "treated differently from others who are wives and girlfriends of defendants ...," ER at 10, and asked the government to prepare a memorandum explaining why it decided not to depart downward.
 
 
 4
 On September 11, 1992, after the government's memorandum and the defendant's response were filed, the district court conducted a second sentencing hearing. The court noted its suspicions that "institutionalized racism" was affecting the U.S. Attorney's decisions whether to recommend downward departures. The court said: "I am very concerned about this case. In looking back through the cases that we have had that involved narcotics, on several occasions your office has recommended downward departure. They always involve white women or Mexican women." ER at 30. The court indicated its intent to depart downward and invited the government to request a hearing, which it did, in order to prove that race played no role in the decision not to request a downward departure for Singleton.
 
 
 5
 The government next filed a supplemental sentencing memorandum, which contained an affidavit from DEA Special Agent Lowery, who had attended meetings with Singleton and the assistant United States Attorney prosecuting her case. Lowery stated that the defendant had not been treated any differently than any of the other defendants she had seen prosecuted for drug crimes. Singleton's memorandum in response contained as exhibits five statistical studies (ER 50-64). One study, exhibit E, indicated that blacks were disproportionately likely to be prosecuted for drug offenses in the Western District of Washington and were less likely to receive a downward departure for substantial assistance.
 
 
 6
 The defendant filed a motion for discovery prior to the hearing date, asking for information concerning the U.S. Attorney's charging decisions and decisions concerning the filing of U.S.S.G. Sec. 5K1.1 (Policy Statement) substantial assistance motions. The government opposed the motion, and the district court denied it as a result. The court later stated that as it understood the law, the government had a right to reject all discovery requests pertaining to its decisions concerning the filing of Sec. 5K1.1 motions. See ER at 86.
 
 
 7
 The district court, on February 8, 1993, filed an unpublished memorandum opinion and findings. ER at 104. On February 9, 1993, it filed supplemental findings of fact and conclusions of law. ER at 120. It found that the government discriminated against Singleton because of her race throughout the charging and sentencing process and, in particular, in refusing to file a Sec. 5K1.1 motion. The district court also held that Sec. 5K1.1, as applied to the defendant, violates Equal Protection.
 
 DISCUSSION
 
 8
 * In Wade v. United States, 112 S.Ct. 1840 (1992), the Supreme Court held that Sec. 5K1.1 gives the government "a power, not a duty, to file a motion when a defendant has substantially assisted." Id. at 1843. It went on to note, however, that a prosecutor's discretion is not without judicially enforceable limits. The Court held that a district court may review the prosecutor's decision not to recommend a downward departure if such a decision is based on an unconstitutional motive, such as race. Id. at 1843-44.
 
 
 9
 In this case, the district court found that the government intentionally considered the defendant's race in its sentencing decisions, including its decision not to file a motion for downward departure under Sec. 5K1.1. It also concluded Sec. 5K1.1 was an unconstitutional violation of Equal Protection as applied to the defendant. The district court supported its findings that the government acted against the defendant because of her race and its conclusion that the guideline violated Equal Protection with statistical studies the defendant submitted. It relied on those studies to demonstrate the effect of institutional racism in both the criminal justice system generally and on the government's downward departure decisions in particular.
 
 
 10
 The government relies on McCleskey v. Kemp, 481 U.S. 279 (1987), to argue that statistical studies, on their own, cannot support a finding that a sentencing decision violated the defendant's right to Equal Protection. In McCleskey, the Supreme Court held that a statistical study indicating that blacks who murdered white victims were more likely to be sentenced to death than other murderers did not prove an Equal Protection violation. Rather, the Court held that an individual defendant "must prove that the decisionmakers in his case acted with discriminatory purpose." Id. at 292; see also United States v. Redondo-Lemos, 955 F.2d 1296, 1301 (9th Cir.1992).
 
 
 11
 Neither the defendant nor the district court advanced any evidence that anyone in the United States Attorneys' office acted with a discriminatory purpose in defendant's particular case, as McCleskey requires. Accordingly, we must vacate Singleton's sentence and remand for resentencing.
 
 II
 
 12
 The government argues that this case should be remanded for resentencing within the Guidelines range. This circuit's case law, however, permits the district court, before resentencing Singleton, to conduct an evidentiary hearing to determine if the government's refusal to make a Sec. 5K1.1 motion on Singleton's behalf was racially motivated.
 
 
 13
 United States v. Redondo-Lemos, 955 F.2d 1296 (9th Cir.1992), establishes a procedure for inquiring into whether racial animus has influenced the government's prosecuting or sentencing decisions. The first step in the analysis requires the defendant to make a prima facie case. The district court may, under its supervisory powers and its duty to safeguard the constitutional rights of defendants, raise the issue of racial discrimination sua sponte based on "its own day-to-day observations." Id. at 1302. Such an observation may establish a prima facie case. Id. In this case, the district judge, relying on his day-to-day observations, expressed concern that the defendant may have been the victim of a discriminatory decision not to file a motion to depart downward.
 
 
 14
 Once the prima facie case has been made, the court is required to give the government the opportunity to rebut the prima facie case. Id. This may be done, the Redondo-Lemos court suggested, through the production of "overall case statistics." Id. In this case, the government produced the affidavit of Agent Lowery, while the defendant produced statistical evidence showing that downward departure motions were made on behalf of blacks less frequently than on behalf of members of other races. ER at 57.
 
 
 15
 At this stage, the district court is required to determine whether the prosecutor's showing is sufficient. If the court deems it inadequate and finds by a preponderance of the evidence that the government's practices have a discriminatory impact, we move to the next and final step of the inquiry. Redondo-Lemos, 955 F.2d at 1302. At this final stage, the court must determine "whether the prosecutor was motivated by a discriminatory purpose." Id. To make this determination, limited discovery and in camera examination of certain prosecution files may be in order, provided that the court is mindful that "it is intruding upon the workings of a coordinate branch of government." Id.
 
 
 16
 In this case, the district court omitted the final step of the inquiry. It found purposeful discrimination on the basis of statistical evidence and its own recollections alone. That is insufficient. It is therefore necessary to remand this case to the district court so that it may conduct a hearing, with the burden of proof on Singleton, to determine whether the government acted with discriminatory purpose in its treatment of Singleton. The district court may allow Singleton limited, in camera discovery in preparation for the evidentiary hearing.[1]
 
 III
 
 17
 The government also argues that Singleton's claim of racially-motivated refusal to recommend a downward departure fails because Singleton did not provide substantial assistance. It relies on United States v. Wade, 112 S.Ct. at 1844, which noted that a showing of assistance is a necessary condition for relief.
 
 
 18
 The trouble with the government's claim is that there is a dispute as to whether Singleton provided assistance to the government. In most cases, the district court may not resolve such a dispute. Id. In this case, however, the defendant made a threshold showing that the government acted in a discriminatory manner. When such a showing is made, the district court may inquire into the grounds for the government's decision not to recommend a downward departure and resolve factual disputes relating to that decision, such as whether the defendant in fact provided substantial assistance.
 
 CONCLUSION
 
 19
 Singleton's sentence is VACATED. The case is REMANDED to the district court for resentencing. The district court may conduct an evidentiary hearing to determine (1) whether Singleton provided substantial assistance to the government and, (2) if it finds that she did provide substantial assistance, whether the government's decision not to recommend a downward departure for the provision of substantial assistance in this particular case was motivated by racially discriminatory animus.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 The government appears to argue that such a hearing is uncalled for in this case. It argues that even if a district court's observations may give rise to a prima facie case, they are insufficiently substantial in this case. In light of the fact that the defendant ultimately produced statistical studies pointing to a disparate impact on black defendants, the court's observations and the defendant's statistics successfully met the prima facie case requirement