Darryl J. WILLIAMS, Plaintiff,

v.

FEDERAL EXPRESS CORPORATION, a foreign corporation, Defendant.

Civil No. 01–1143–JO.

United States District Court, D. Oregon.

July 2, 2002.

David H. Black, Jr., HR Juris, Vancouver, WA, for Plaintiff.

Anne E. Denecke, Davis Wright Tremaine, Portland, OR, Frederick Douglas, Richard C. Paul, Sandra C. Isom, Federal Express Corporation, Memphis, TN, for Defendant.

## OPINION AND ORDER

JONES, District Judge.

This is a race discrimination case in which plaintiff Darryl J. Williams claims that his former employer, defendant Federal Express ("defendant" or "FedEx"), terminated him because he is African American and because he complained of discriminatory treatment. Plaintiff's complaint, originally filed in state court on June 11, 2001, asserts federal claims for race discrimination and retaliation, and state law claims for wrongful discharge and intentional infliction of emotional distress.

Before the court is defendant's motion for summary judgment, filed May 2, 2002. Defendant essentially contends that plaintiff was terminated because he repeatedly falsified time cards and other records, despite repeated warnings and in violation of company policy. Having carefully reviewed the papers, defendant's motion is granted in part and denied in part in accordance with this opinion.

## BACKGROUND

Plaintiff was hired by defendant as a delivery courier in September of 1992, where he remained until he was terminated on June 11, 2001. He initially worked at the Portland location, but was eventually transferred to the Tualatin, Oregon facility. While plaintiff's primary duty was to work as a delivery driver, he, like other couriers, was also expected to aid with the morning support operation, during which time the deliveries were sorted and distributed to individual drivers.

On August 13, 1998, plaintiff received a warning letter from his then-manager, Tony Vandenberg, accusing plaintiff of falsifying delivery records by recording single deliveries as two separate stops. Plaintiff concedes that this written warning came after a series of prior verbal warnings to the same effect. *See* Williams Deposition, p. 49. Plaintiff also admits that these warnings, received by Mr. Vandenberg, were not motivated out of racial animus or any other improper motive.

The following spring, plaintiff was "counseled" by another manager, Tim Conley, for repeated tardiness. Mr. Conley first counseled plaintiff on May 28, 1999, when he was late for his "sort" position. At that time, Mr. Conley allegedly put his arm around plaintiff in a "threatening" way, and yelled in plaintiff's ear that he was going to write him up for excessive tardiness. On June 1, 1999, plaintiff was forty minutes late, and Mr. Conley again reprimanded him. During their meeting, plaintiff accused Mr. Conley of harassment, stating "[y]ou are harassing me, I

know how to start a harassment case against you." *See* Conley Deposition, p. 56. After the June 1 reprimand, defendant issued to plaintiff a "documented counseling," according to defendant, "because of [plaintiff's] pattern of tardiness and because he had been forty minutes late to his sort position that day." Defendant's Concise Statement of Facts, p. 2.

Apparently in order to hide his tardiness on June 1, 1999, plaintiff now admits in his deposition that he intentionally altered his start time for that date, by hand writing (in two places) his scheduled start time of 6:45 a.m. in place of his actual start time of 7:25 a.m. Plaintiff claims that after he falsified his time card, he went in to discuss the matter with his immediate supervisor, Paul Bersani, because his "conscience was bothering [him]." *See* Plaintiff's Deposition, p. 110. Mr. Bersani states that he does not recall this conversation.

Plaintiff calls into question Mr. Bersani's motives, contending that Mr. Bersani was critical of African Americans in general, and unfair to plaintiff in particular. Plaintiff claims that between 1996 and 1998, before Mr. Bersani became a manager, he made racially derogatory comments, including "blacks have no ethics," "blacks have no class," and "those black bastards." *See* Complaint, ¶ 8. He also cites the deposition of Will Rogers, another African American FedEx employee, who stated that Mr. Bersani said "watch out for the driver, lady driver, they're all Jews out here." *See* Rogers Deposition, p. 8. Finally, plaintiff alleges that Mr. Bersani disproportionately selected him to assist the "handlers" in unloading "cans" between two and four times per week, despite the fact that as many as 21 other couriers could have been selected. Plaintiff admits, however, that on May 20, 1999, Mr. Bersani, gave plaintiff a very positive performance evaluation. Mr. Bersani rated him

as a "good employee" with an overall performance evaluation of 6.0 out of 7.0. On the same evaluation, plaintiff was given a 7.0 on "attendance and punctuality" and "adherence to acceptable practices of FedEx." *See* Bersani Deposition, p. 53.

On June 1, 1999, the same day plaintiff was reprimanded by Mr. Conley for falsifying his time card, plaintiff initiated a harassment complaint against defendant. Defendant contends that this initial complaint alleged sexual harassment, and there is no copy of the complaint included in the materials. The following day, on June 2, 1999, the Managing Director of the Pacific Northwest District, Patrick Little, acknowledged the receipt of plaintiff's complaint and requested additional information. Plaintiff submitted a follow-up complaint on June 7, 2001, in which he checked boxes indicating that he had been subjected to "sexual harassment," "harassment" on the basis of "color," and "retaliation." *See* Employee Information Form, p. 33, attached as Exhibit 6 to plaintiff's deposition.

In the meantime, on June 4, 1999, still investigating the falsification charges against plaintiff, Mr. Bersani placed him on suspension pending the outcome of the investigation. Thereafter, Mr. Bersani consulted with his superior, Russell Bronson, and with the personnel department, about the charges against plaintiff. On June 11, 1999, plaintiff was terminated, for the stated reason of violating defendant's "Acceptable Conduct Policy's" prohibition against deliberate falsification of company documents. Mr. Bersani himself stated in his deposition that he based the decision to terminate plaintiff solely on the June 1, 1999 incident, and not on any other incidents of tardiness or alleged falsification.

On June 11, 2001, exactly two years after he was terminated, plaintiff filed his complaint in state court, alleging state and

federal claims for race discrimination, retaliation and intentional infliction of emotional distress. The complaint was served on defendant on June 25, 2001, and defendant removed to this court on July 25, 2001, on the basis of both diversity and federal question jurisdiction.

## STANDARD OF REVIEW

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the moving party shows that there are genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact. *United Steelworkers of America v. Phelps Dodge,* 865 F.2d 1539, 1542 (9th Cir.1989).

The substantive law governing a claim determines whether a fact is material. *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630 (9th Cir.1987). Reasonable doubts as to the existence of a material fact issue are resolved against the moving party. *Id.* at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. *Id.* at 630–31.

## DISCUSSION

In its motion for summary judgment, defendant attacks each of plaintiff's asserted claims: 1) Race Discrimination; 2) Retaliation/Wrongful Discharge; and 3) Intentional Infliction of Emotional Distress. The arguments related to each are addressed in the discussion that follows.[1]

### A. *Race Discrimination*

■ The Ninth Circuit recently held that the McDonnell–Douglas "burden-shifting" analysis applies to employment discrimination claims brought under O.R.S. § 659.030. *Snead v. Metropolitan Prop. & Casualty Ins. Co.,* 237 F.3d 1080 (9th Cir.2001) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Courts are therefore directed to apply the same analysis to discrimination claims brought under federal and Oregon state law. Under the McDonnell–Douglas analysis, a plaintiff may establish discrimination by direct evidence of discriminatory motive. Because such proof is generally unavailable, however, the Court held that plaintiffs may indirectly establish employment discrimination with a three-step process. First, the plaintiff must make a prima facie showing of retaliation or other discriminatory action on the part of the employer. Second, if plaintiff makes such a showing, then the burden shifts to the defendant to put forth a legitimate reason for the adverse action. Plaintiff must then demonstrate that the defendant's proffered justification is a pretext for discrimination. *Washington v. Garrett,* 10 F.3d 1421, 1431–32 (9th Cir. 1993).

### 1. *Can Plaintiff Establish a Prima Facie Case?*

To establish a prima facie case, a plaintiff must offer evidence that "give[s] rise to

---

1. In its motion, defendant initially argued that plaintiff's claims were barred by the two-year statute of limitations applicable to actions asserted under 42 U.S.C. § 1981. Defendant's argument was based on the erroneous belief that plaintiff filed his complaint on June 12, 2001, two years and one day after the June 11, 1999 termination date. Plaintiff correctly points out in his response that he filed the complaint on June 11, 2001, and defendant concedes the statute of limitations argument in its reply memorandum.

an inference of unlawful discrimination." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). An inference may be established either by direct evidence of discriminatory intent (not alleged here), or by the burden-shifting analysis established in *McDonnell–Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 889 (9th Cir.1994). Under that test, an employee may establish a prima facie case of race discrimination if he submits evidence that (1) he belongs to a protected class, (2) he was qualified for the position, (3) he was subjected to an adverse employment action, and (4) similarly situated individuals outside of the employee's protected class were treated more favorably. *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654 (9th Cir.2002).

■ In this case, defendant claims that plaintiff is unable to establish a prima facie case because he cannot show that other similarly situated individuals outside of plaintiff's employment class were treated more favorably. Plaintiff has submitted substantial evidence, however, that other Caucasian employees routinely altered their clock-in times and were not reprimanded or terminated. In his concise statement of facts, plaintiff includes a graph that lists 49 instances of time card alterations by other employees. The variances in time between the actual start times and the hand-written start times range from one minute to as many as two hours and forty minutes.[2] Plaintiff asserts that despite these numerous "falsifications," none of the other 38 individuals who altered their time cards were terminated on that basis. These "other" employees included Craig Loughridge, a Caucasian

employee who allegedly falsified his time card but was not terminated.

Defendants respond that these allegations do not establish differential treatment to similarly situated individuals. Defendant's arguments, however, are inadequate to defeat plaintiff's prima facie case on this point. First, defendant contends that of the other individuals, plaintiff was the only employee who was found to have *intentionally* falsified his time card in order to conceal his tardiness. As plaintiff points out, however, the issue of Mr. Bersani's motivations is an issue in this case because plaintiff alleges that he approached Mr. Bersani, admitted the falsification and offered to amend it. In his deposition Mr. Bersani stated that he did not recall this exchange, leaving an obvious factual dispute. Furthermore, in light of as many as 49 other acts of falsification, there is at least a factual issue as to whether any of the other employees intentionally falsified their time cards, and as to whether an investigation into their intent should have been undertaken.

Defendant also urges us to adopt a fairly restrictive version of the "similarly situated" test, citing the Sixth Circuit and the Eighth Circuits for the proposition that "[t]o be 'similarly situated,' the individuals with whom a plaintiff seeks to compare his treatment must have dealt with the same supervisor, been subject to the same standards and engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *See* Defendant's Memorandum in Support of Motion for Summary Judgment, p. 9 *(citing Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir.1992); *Lanear v. Safeway Grocery*, 843 F.2d 298

---

**2.** On the other hand, it is significant to note that the other individual who was two hours and forty minutes late was the only other employee. African American employee at the Tualatin facility, Will Rogers. It is undisputed that Mr. Rogers was not terminated.

(8th Cir.1988)). Even if we were to adopt this rather narrow test, however, which has not been done in the Ninth Circuit, factual issues preclude summary judgment. First, at least two of the other individuals who allegedly falsified their time cards also worked under the supervision of Mr. Bersani, and their allegedly falsified time cards bore his initials. Second, there is no dispute that all the employees in question were subject to the same "Acceptable Conduct" policy.

In sum, plaintiff has clearly made a sufficient showing to establish a prima facie case. To establish a prima facie case, a party must present only "enough evidence to demonstrate a reasonable inference of invidious discrimination." *United States v. Redondo–Lemos I*, 955 F.2d 1296, 1302 (9th Cir.1992) (*reversed on other grounds by United States v. Redondo–Lemos*, 27 F.3d 439 (9th Cir.1994)). Because plaintiff has identified numerous time card alterations by other employees, and raised serious questions as to the knowledge and intentions of his manager, Mr. Bersani, he has clearly created a factual dispute as to whether he suffered differential treatment to those similarly situated to him. Because this is the only prima facie factor defendant challenges, plaintiff has made the minimal showing necessary for a prima facie case of discrimination.

2. *Can Defendant Rebut Plaintiff's Claim with a Legitimate Reason for the Termination?*

■ To defeat the inference created by plaintiff's prima facie showing of discrimination, defendant must "articulate a legitimate, nondiscriminatory reason for the plaintiff's termination." *Dyer v. TW Serv., Inc.*, 973 F.Supp. 981, 984 (W.D.Wash.

1997). As discussed, defendant has stated that plaintiff's tardiness and falsification of time cards as the basis for termination. Therefore, while the legitimacy of these justifications is disputed, defendant has articulated the requisite nondiscriminatory justification for plaintiff's termination.

3. *Is Defendant's Proffered Justification Pretext for Discrimination/Retaliation?*

Even if a defendant can offer a legitimate, non-discriminatory motive for its action, a plaintiff may rebut that showing by submitting evidence that the motive provided was actually pretext for discrimination. To sustain his burden, plaintiff must offer "specific and significantly probative evidence" that the proffered justification for terminating him is a pretext. *Schuler v. Chronicle Broadcasting Co.*, 793 F.2d 1010, 1011 (9th Cir.1986). To make a showing of pretext, a plaintiff must establish either "(a) that the alleged reason for [the plaintiff's] discharge was false, or (b) that the true reason for his discharge was a discriminatory one."[3] *Wells v. P/M Industries, Inc.*, 2000 WL 64271, *5 (D.Or. Jan. 24, 2000).

Plaintiff contends that the events giving rise to his termination were motivated not out of a legitimate performance-related issue, but rather out of animus arising from plaintiff's race. He cites three general categories of evidence in support of this assertion. First, plaintiff recounts racially derogatory comments allegedly made by his official supervisor, Operations Manager Paul Bersani, including "blacks have no ethics," "blacks have no class," and "those black bastards." *See* Complaint, ¶ 8. Plaintiff contends that Mr. Bersani made similar comments to plaintiff's co-worker,

---

**3.** "At trial, the plaintiff must prove both of these elements." *See Wells*, 2000 WL 64271, *5, n. 3.

Will Rogers, including "watch out for the driver, lady driver, they're all Jews out here." *See* Rogers Deposition, p. 8. The alleged statements were made between 1996 and 1998, and were unrelated to work matters. At the time the statements were made, Mr. Bersani was not a manager and plaintiff was working as a courier at another facility (Portland).

As further evidence of improper motive, plaintiff states that Mr. Bersani repeatedly assigned him undesirable work. Specifically, plaintiff asserts that Mr. Bersani selected him to unload "cans" anywhere from two to four times per week, despite the fact that there were as many as 21 couriers who could assist. Unloading the cans is, according to plaintiff, hard manual labor and is primarily the job of "handlers."

Finally, plaintiff asserts that other Caucasian workers who committed similar violations of company policy were not reprimanded and/or terminated. In his concise statement of facts, plaintiff includes graphs that document clock-in times and manual time entries for numerous other employees. The differences between the clock-in times and the manual entry times range from one minute to two hours and forty minutes.

Defendant makes a variety of arguments in support of its claim that the evidence is inadequate to show pretext. It contends, for example, that the racially derogatory remarks were "stray" remarks that were not relevant to the termination decision. It also emphasizes that plaintiff had an admitted history of falsifying time records, and that he did in fact falsify his time card on the day in question. In light of the numerous factual disputes in this case, however, regarding what Mr. Bersani knew about the falsification, whether he considered it an intentional falsification, and whether he was acting out of racial animus, defendant's factual arguments are not sufficient to warrant a grant of summary judgment on pretext. Accordingly, defendant's motion for summary judgment with respect to plaintiff's race discrimination claims is DENIED.

B. *Retaliation*

■ Defendant also challenges plaintiff's claims for retaliation and wrongful discharge. In a retaliation case, the burden shifting scheme is similar to that in a discrimination case, and applies to claims under both state and federal law. *See Lam v. University of Hawaii*, 40 F.3d 1551, 1559 & n. 11 (9th Cir.1994); *Snead*, 237 F.3d 1080. "A prima facie case requires the plaintiff to show 'that he engaged in a protected activity, his employer subjected him to adverse employment action, and there is a causal link between the protected activity and the employer's action.'" *Nidds v. Schindler Elevator Corp.*, 113 F.3d 912 (9th Cir.1996) (*quoting Flait v. North Am. Watch Corp.*, 3 Cal.App.4th 467, 4 Cal.Rptr.2d 522 (1992)).

■ Here, defendant asserts that plaintiff is unable to establish a claim for retaliation because he is unable to establish 1) that he engaged in protected activity, and 2) any causal connection between the alleged protected activity and plaintiff's termination. In his complaint, plaintiff alleges that he "was fired for exercising a right related to his role as an employee and one of important public interest—the right to resist racial discrimination and harassment." Complaint, ¶ 18. At the time he was being reprimanded, plaintiff orally complained of alleged discrimination, and also submitted a written complaint of harassment. *See* Employee Information Form, p. 33, attached as Exhibit 6 to plaintiff's deposition. While defendant claims that these allegations are too generalized, there is no question these alleged com-

plaints constitute the exercise of a protected right. *See, e.g., EEOC v. Crown Zellerbach Corp.*, 720 F.2d 1008, 1012–13 (9th Cir.1983); *see also Sias v. City Demonstration Agency*, 588 F.2d 692, 695–96 (9th Cir.1978) (finding that an employee's letter to HUD complaining of employment discrimination against him and other Hispanics is protected).

Defendant makes much of the fact that plaintiff included an allegation of sexual harassment in his June 7, 1999 written complaint. Defendant claims that this was objectively unreasonable, and this unreasonableness proves that plaintiff did not have a good faith belief in his harassment complaint. Plaintiff's claim of sexual harassment apparently arises out of a single incident in which another manager, Tim Conley, put his arm around plaintiff and used an "indignant and harsh tone with threatening overtones." *See* Employee Statement Form, attached as Exhibit 6 to Plaintiff's Deposition. There is no question that this would be insufficient, alone, to support a claim for sexual harassment, and any claimed violation on that basis would not be "objectively reasonable."

Plaintiff concedes that there is not a cognizable claim for sexual harassment, and has not asserted one, but argues that plaintiff complained also of race discrimination and more generally of "harassment." In the employee statement form, plaintiff did check boxes indicating "harassment" on the basis both of sex and "color." Because there is a factual dispute regarding the legitimacy of plaintiff's race discrimination claim, and because plaintiff

did indicate that he suffered discrimination on the basis of his "color," this is sufficient to support plaintiff's claim that he asserted the violation of a protected right.

■ The key issue in this case, then, is whether plaintiff can establish a causal connection between his complaints and defendant's decision to terminate him. To prove causation, plaintiff "must present evidence to raise the inference that [his] protected activity was the likely reason" for his termination. *Jaurrieta v. Portland Public Schools*, 2001 U.S. Dist. LEXIS 23515 (D.Or. Dec. 14, 2001) (*quoting Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir.1982)).

■ Plaintiff relies primarily on the timing of the events to support his claim of retaliation. He points out that he made his initial complaint on June 1, and then followed up with a written complaint on June 7, 1999. Mr. Conley counseled plaintiff for tardiness and falsification on June 1, plaintiff was suspended on June 4, and he was terminated on June 11, 1999.

The Ninth Circuit has held that where "an adverse employment action follows on the heels of protected activity," causation can be inferred from timing alone. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir.2002); *see also Miller v. Fairchild Indus.*, 885 F.2d 498, 505 (9th Cir.1989) (prima facie case of causation was established when discharges occurred forty-two and fifty-nine days after EEOC hearings). Here, it is undisputed that the complaints and plaintiff's termination occurred in close proximity to each other.[4]

---

4. Admittedly, defendant does assert that plaintiff complained of discrimination *after* the adverse employment action had commenced. According to defendant, Mr. Conley "counseled" plaintiff on June 1, and plaintiff then made his first oral complaint. Which of these two events occurred first on that date is not definitively established, however. Furthermore, it is undisputed that the June 4 suspension followed plaintiff's initial oral complaint and the June 11 termination followed his written complaint, so I would reject defendant's request that we find that plaintiff's complaints necessarily *followed* defendants adverse employment decisions.

Given the minimal showing necessary to establish a prima facie case, the timing of plaintiff's suspension and termination are sufficient to raise an inference of causation.

■ Once a prima facie case is established, courts employ the same *McDonnell Douglas* burden shifting that is used in discrimination claims. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054 (9th Cir. 2002). Thus, the defendant can defeat the inference of retaliation by articulating a legitimate, non-discriminatory reason for the discharge. Here, as discussed above, defendant cites plaintiff's tardiness and falsification of time records, satisfying its burden at this stage.

Upon a showing of a legitimate reason for the discharge, the plaintiff must come forward with evidence that the asserted reason is a pretext for retaliation. Plaintiff makes no effort to satisfy this burden. Aside from the mere proximity in time, there is nothing in the record that would permit a finding that plaintiff's termination for tardiness and falsification was a pretext for retaliation. While the Ninth Circuit has found proximity in time to be sufficient, in some cases, to establish the causation prong of the prima facie case, timing alone is generally not enough to establish pretext. *See, e.g., Miller v. Fairchild Indus., Inc.*, 797 F.2d 727, 731 (9th Cir.1986) (holding that a plaintiff may not "rely on the proximity in time between the protected activity and the adverse employment action to create a triable issue of fact after the employer has offered legitimate reasons for its actions"). Because there is nothing more than proximity in time in the record to support pretext, defendant's motion for summary judgment with respect to plaintiff's retaliation and wrongful discharge claims is GRANTED.

## C. Intentional Infliction of Emotional Distress

■ Finally, defendant challenges plaintiff's claim for intentional infliction of emotional distress ("IIED"). To succeed on a claim for IIED, plaintiff must show that (1) the defendant intended to inflict severe emotional distress on the plaintiff; (2) the defendant's acts did in fact cause the plaintiff to suffer severe emotional distress; and (3) the defendant's acts consisted of "some extraordinary transgression of the bounds of socially tolerable conduct." *Lewis v. Oregon Beauty Supply Co.*, 302 Or. 616, 733 P.2d 430, 436 (1987).

The Oregon Supreme Court recently clarified the intent requirement in an IIED claim, concluding that while there is no "purpose" requirement, there must be evidence that the person acted out of a desire to inflict emotional distress. *McGanty v. Staudenraus*, 321 Or. 532, 550, 901 P.2d 841, 852 (1995). Adopting the Restatement of Torts definition, the court explained: "The word 'intent' is used throughout the Restatement of [Torts] to denote that the actor desires to cause consequences of his act, or that he believes that the consequences are substantially certain to result from it." *Id.*

■ In this case, the only conduct alleged in support of plaintiff's IIED claim is plaintiff's reprimand, suspension and ultimate termination by Mr. Bersani; he has alleged no statements or conduct from which a fact finder could infer any intent or desire to cause plaintiff severe emotional distress. Generally, cases that have permitted IIED claims to proceed have included evidence of harassment, unwanted touching or other openly offensive behavior. *See, e.g., Franklin v. Portland Community College*, 100 Or.App. 465, 787 P.2d 489, 492 (1990) (jury may infer the specific intent to cause emotional distress when the defendant engages in a continu-

ing pattern of discrimination and retaliation with verbal and physical harassment); *Palmer v. Bi–Mart Company, Inc.,* 92 Or. App. 470, 758 P.2d 888, 889–90 (1988) (supervisor engaged in course of harassment verbally and through notes with sexually explicit wording). For the same reasons, plaintiff has made an insufficient showing that defendant's actions constituted an extraordinary transgression of the bounds of socially tolerable conduct. Thus, while "an employer-employee relationship … imposes a greater obligation to refrain from inflicting mental distress than the obligation which exists between strangers," *see Trout v. Umatilla Co. School District,* 77 Or.App. 95, 712 P.2d 814, 818–819 (1985), there is simply no showing in this case of intentional and outrageous conduct to support plaintiff's IIED claim. Accordingly, defendant's motion with respect to plaintiff's IIED claim is also GRANTED.