**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lawrence J. KIDDER,
Defendant–Appellant.**

No. 87–3172.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Nov. 1, 1988.

Decided March 15, 1989.

John W. Lundin, Seattle, Wash., for defendant-appellant.

Kenneth G. Bell, Asst. U.S. Atty., Seattle, Wash., for plaintiff-appellee.

Before SKOPIL, NELSON and BRUNETTI, Circuit Judges.

NELSON, Circuit Judge:

Kidder pleaded guilty to possession, with intent to distribute, of at least 500 grams of cocaine, in violation of 21 U.S.C. § 841(b)(1)(B). This offense carries a minimum penalty of five years in prison. The district court rejected Kidder's constitutional challenges to the sentencing provisions and imposed the minimum sentence. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

As part of an undercover operation, Special Agent Joseph Daly of the Drug Enforcement Administration met with Steven Dahl and Mark Hecock (Kidder's codefendants) on March 20, 1987 in order to arrange a sale of cocaine. After discussing a proposed sale of two kilograms, Agent Daly waited while Dahl and Hecock went to obtain the cocaine from the appellant, Lawrence Joseph ("Joe") Kidder. Upon returning, Agent Daly, Dahl, and Hecock had further discussions at a restaurant concerning possible future drug transactions. The three then went out to a car, where Dahl opened a briefcase containing almost two kilograms of cocaine. Both Dahl and Hecock were then arrested. After waiving his *Miranda* rights, Dahl admitted obtaining the cocaine, and identified Kidder as the source of his supply. Shortly thereafter, Kidder arrived at the restaurant in order to collect the money for the two kilos of cocaine. Kidder was arrested. He admitted supplying the cocaine to Dahl, but refused to identify his supplier. Subsequent laboratory tests confirmed that the two packages delivered to Dahl by Kidder contained cocaine. One contained approximately 997 grams of 93% pure cocaine, and the other contained 979 grams of 88% pure cocaine.

On May 20, 1987, Kidder was indicted on two counts: (1) conspiracy to distribute cocaine, in violation of 21 U.S.C. § 846 (Count I); and (2) possession, with intent to distribute, of more than five hundred grams of cocaine, in violation of 21 U.S.C. §§ 841(a) & 841(b)(1)(B) (Count II). During pretrial proceedings, Kidder sought to have the

mandatory minimum prison terms specified in 21 U.S.C. § 841(b)(1)(B) declared unconstitutional. Without waiving these objections, Kidder pleaded guilty to Count II of the indictment on October 6, 1987. In exchange for the guilty plea on Count II, the government agreed that Count I would be dismissed and that the term of imprisonment imposed on Count II would not exceed five years.

On November 20, 1987, the case came up for sentencing. The district court denied Kidder's motion to declare the sentencing provisions of 21 U.S.C. § 841(b)(1)(B) unconstitutional, and the court then sentenced Kidder to the minimum term of five years imprisonment without parole, followed by four years of supervised release. Although the district court thought that the mandatory minimum was "wrong as a matter of Congressional policy" and did not take appropriate consideration of the individual characteristics of Kidder, the court concluded that Congress could constitutionally impose a minimum sentence for this offense. The court also indicated that it thought the prosecutor would have been wiser to accept a plea of guilty to Count I instead of Count II, since that would have avoided the minimum sentence. Nonetheless, the court concluded that it was within the prosecutor's discretion to refuse to dismiss Count II. Accordingly, the court rejected Kidder's challenges to the statutory sentencing scheme and imposed the minimum sentence.

Kidder filed a timely notice of appeal to this court.

## DISCUSSION

1. *Kidder's eighth amendment claims.*

a. Right to treatment for mental disorders.

■ Kidder argues that his imprisonment deprives him of necessary medical treatment in violation of the eighth amendment.[1] Specifically, Kidder asserts that he is suffering from "Post–Traumatic Stress Disorder" (PTSD), an emotional disorder brought on by his harrowing experiences as a soldier in Vietnam. The defense asserts that Kidder is unable to receive adequate treatment in prison and that, indeed, incarceration may be so emotionally difficult for Kidder that he may commit suicide. The defense argues that, even if Kidder does not end up killing himself in prison, his incarceration for five years will so affect his mental health that "all chance for rehabilitation ... will be lost."

The government does not really challenge the defense's contention that Kidder suffers from a severe mental disorder.[2] Its primary argument is that Kidder has not made a sufficient showing that he could not be adequately treated in prison. In evaluating this argument, we begin by noting that the government appears to be correct in its assertion that the application of the standard of care required from the government is altered by the procedural posture of this case and the nature of the remedy Kidder is seeking. This is not a civil suit in which Kidder seeks to obtain constitutionally adequate treatment from prison officials. Rather, Kidder seeks to void completely his prison term. In order to prevail on such a claim, Kidder must

---

1. In *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 291, 50 L.Ed.2d 251 (1976), the Supreme Court held that "deliberate indifference to [a prisoner's] serious medical needs" violates the eighth amendment. Several lower court cases have extended *Gamble* to cover serious mental disorders. *See, e.g., Hoptowit v. Ray,* 682 F.2d 1237, 1253 (9th Cir.1982); *Woodall v. Foti,* 648 F.2d 268, 272 (5th Cir. Unit A June 1981); *Bowring v. Godwin,* 551 F.2d 44, 47–48 (4th Cir.1977); *Capps v. Atiyeh,* 559 F.Supp. 894, 916–21 (D.Or. 1982).

2. During the proceedings below, Kidder presented supporting affidavits from a clinical psychol-

ogist (Dr. Wilson) and a Veterans Administration psychiatrist. Although in its brief the government suggests that these evaluations are too "gloomy," the government has offered no affidavits of its own that would tend to rebut this evidence. Indeed, the government has not offered anything to show that Kidder's ability to function is *not* seriously impaired or that Kidder's condition is *not* such that he poses a danger to himself. Accordingly, the record before the trial court only permits one conclusion on this issue: Kidder suffers from a serious emotional disorder.

show that *no* constitutionally acceptable treatment can be provided while he is imprisoned. *See Feliciano v. Barcelo,* 497 F.Supp. 14, 35 (D.P.R.1979) (Unless prison officials "know that they *cannot* provide medical or psychiatric services," failure to hospitalize prisoner is not cruel and unusual) (emphasis added).

This conclusion is supported by the First Circuit's decision in *Jackson v. Fair,* 846 F.2d 811 (1st Cir.1988). In *Jackson,* a prisoner sought to challenge his transfer from a high-security psychiatric hospital to an ordinary prison. He claimed that he could not receive adequate care while incarcerated, and that therefore the decision to return him to prison violated the eighth amendment. The First Circuit rejected this claim, noting that even if the mental health care offered at the prison fell below the constitutional minimum, Jackson would not necessarily be entitled to return to the mental hospital, since that was only one of "several possible remedies for the [alleged] constitutional violation." *Id.* at 817–18. In particular, the court noted that, as an alternative to ordering that the prisoner be returned to the mental hospital, the district court might order that the inmate receive a higher level of care while in prison. *Id.* at 818. Accordingly, for purposes of this inquiry, it is irrelevant whether Kidder's current treatment is inadequate;[3] he must show that it cannot be made adequate.

Even if one accepts as true all of the affidavits Kidder submitted, it seems clear that Kidder has failed to make such a showing. At most, the affidavits establish that in-patient psychiatric care would be the *best* course of treatment; they do not establish that it is the *only* constitutionally acceptable treatment. In his brief to this court, Kidder simply asserts that the provision of a prison psychiatrist is inadequate.

There is nothing in the record that supports this assertion. Indeed, the only comment in Kidder's affidavits that mentions the adequacy of treatment during imprisonment is the following statement of Dr. Wilson, a clinical psychologist: "It is my opinion that at present no federal corrective facility offers adequate treatment programs for convicted felons suffering from PTSD." Dr. Wilson based this conclusion on his observations of other PTSD sufferers who were incarcerated, all of whom he thought were adversely affected by their time in prison. Although Dr. Wilson's statements in this regard might be useful to suggest that past or even present treatments are inadequate, they do not support the conclusion that *no* adequate treatment can be made available while Kidder is incarcerated. In fact, one of the reasons why Dr. Wilson thought that existing prison programs were inadequate is that "proper psychotherapeutic or psychotropic medication" was not made available to any of the earlier PTSD sufferers he had examined. This underscores the fact that Dr. Wilson's affidavit does not address the question of whether prison programs can be improved in order to provide constitutionally adequate care. Accordingly, it seems clear that the district court did not err in concluding that constitutionally adequate treatment of Kidder's emotional problems is possible during incarceration.[4]

### b. Punishment of status rather than conduct.

Kidder also asserts that he is being unconstitutionally punished because of his status as a mentally ill drug addict. Although the exact parameters of Kidder's argument on this score are difficult to discern, the basic thrust of the claim is that,

**3.** Indeed, as Kidder concedes, the court's review of this issue on appeal is limited solely to consideration of the record before the district court at the time of sentencing. Accordingly, this court may not consider any of the additional affidavits submitted in the appendices to Kidder's reply brief. These materials might be considered in a civil suit challenging Kidder's conditions of confinement, but they may not be used on this appeal from his criminal sentence.

**4.** We reiterate that the question posed by this appeal is a very narrow one. We hold only that Kidder has not shown that constitutionally adequate treatment cannot be made available during imprisonment, and we therefore conclude that it does not violate the eighth amendment to *sentence* Kidder to prison. We therefore have no occasion to decide whether the treatment Kidder is presently receiving is constitutionally adequate.

since his involvement in this case was assertedly caused by his mental illness, to imprison him for his drug dealing is tantamount to punishing him for being mentally ill. Kidder argues that this is unconstitutional unless the government affirmatively provides him with rehabilitative treatment. The government argues that Kidder is being punished only for his conduct, and furthermore that if Kidder wanted to establish a link between his status as a mentally ill person and his criminal actions, he should have pleaded insanity.

*Ohlinger v. Watson,* 652 F.2d 775 (9th Cir.1980), establishes that a state may not involuntarily confine a person because of his or her status unless it provides rehabilitative care. The court expressly acknowledged that the individualized rehabilitative treatment required in such a case is significantly more generous than the "medical necessity" standard ordinarily applied to the medical needs of prisoners incarcerated solely because of their conduct. *See id.* at 777. Kidder's claim that he is being punished because of his status is thus in part aimed at imposing a higher standard of medical care on the government. *Ohlinger,* however, is distinguishable from the present case in that the statute in *Ohlinger* expressly provided for enhanced penalties for mentally ill individuals. *See* Or.Rev. Stat. § 137.111 (Court may impose indeterminate life sentence for sex offender where (1) victim was under age sixteen and (2) defendant "had a mental or emotional disturbance, deficiency or condition, predisposing him to the commission of [sexual offenses].") (repealed 1971). Here, by contrast, the statute only punishes a person for the *act* of possessing illegal drugs with intent to distribute. *See* 21 U.S.C. § 841(a)(1). The act therefore does not run afoul of the Supreme Court's decision in *Robinson v. California,* 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), which held that a defendant may not be convicted of a crime simply by showing that he or she has a particular forbidden status. As Justice Marshall explained in his plurality opinion in *Powell v. Texas,* 392 U.S. 514, 533, 88 S.Ct. 2145, 2154, 20 L.Ed.2d 1254 (1968):

The entire thrust of *Robinson*'s interpretation of the Cruel and Unusual Punishment Clause is that criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing, or perhaps in historical common law terms, has committed some *actus reus.* It thus does not deal with the question of whether certain conduct cannot constitutionally be punished because it is, in some sense, "involuntary" or "occasioned by a compulsion."

*See also United States v. Ocegueda,* 564 F.2d 1363, 1366–67 (9th Cir.1977) (citing this passage with approval); *Budd v. Madigan,* 418 F.2d 1032, 1034 (9th Cir.1969) (defendant challenged his conviction for public drunkenness on the grounds that his chronic alcoholism rendered his conduct involuntary and that punishment for his public drunkenness thus violated *Robinson;* the court stated that *Robinson* "has no application" because the defendant was being punished for his acts, and not simply because he was an alcoholic), *cert. denied,* 397 U.S. 1053, 90 S.Ct. 1394, 25 L.Ed.2d 669 (1970).

Although the prosecution of Kidder thus does not run afoul of *Robinson,* that does not mean that there are no potential constitutional problems. Kidder argues that his actions were *caused* by his mental illness and drug addiction and that the involuntary nature of his actions renders them immune from criminal punishment of the sort imposed here. In other words, even conceding that Kidder is being punished for his acts rather than for his status, he argues that it nonetheless violates the eighth amendment to imprison him, in light of the assertedly involuntary nature of his conduct. Although this difficult issue was squarely raised in *Powell,* no majority opinion emerged.

■ We need not decide this issue because the procedural posture of this case bars Kidder from raising it. This case is an appeal from a sentence imposed after a plea of guilty to the charge of possession of cocaine with intent to distribute. A guilty plea is an admission of each and

every element required to establish the offense. *See Larios–Mendez v. INS*, 597 F.2d 144, 146 (9th Cir.1979); *Frye v. United States*, 411 F.2d 562, 563 (5th Cir.1969). Kidder's plea thus constitutes an admission that he had the requisite culpable intent. Accordingly, Kidder may not now claim that his actions were essentially involuntary and that they therefore may not be constitutionally punished. Indeed, Kidder's real objection here appears to be that the Insanity Defense Reform Act of 1984, *see* 18 U.S.C.A. § 17 (West Supp.1988), prevents him from asserting a defense based on his mental illness and drug addiction. The proper procedure to raise this sort of claim would have been for Kidder to have pleaded not guilty and then to challenge the constitutionality of the Insanity Defense Reform Act. Having pleaded guilty, however, Kidder may not now claim that his actions were really involuntary and thus not constitutionally susceptible to punishment.

 c. Proportionality of the sentence to the offense.

 ■ Kidder argues that a five-year prison sentence, without the possibility of parole, is so disproportionate to his crime as to constitute cruel and unusual punishment. The standards for evaluating such a claim were spelled out by the Supreme Court in *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983). The Court stated that proportionality analysis "should be guided by objective criteria, including (i) the gravity of the offense and the harshness of the penalty; (ii) the sentences imposed on other criminals in the same jurisdiction; and (iii) the sentence imposed for commission of the same crime in other jurisdictions." *Id.* at 292, 103 S.Ct. at 3010. The Court cautioned, however, that "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences [will be]

exceedingly rare." *Id.* at 289–90, 103 S.Ct. at 3009–10 (quoting *Rummel v. Estelle*, 445 U.S. 263, 272, 100 S.Ct. 1133, 1138, 63 L.Ed.2d 382 (1980)); *see also United States v. Yarbrough*, 852 F.2d 1522, 1546 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 171, 102 L.Ed.2d 140 (1988). "Reviewing courts ... should grant substantial deference to the broad authority that legislatures necessarily possess in determining the types and limits of punishments for crimes...." *Solem*, 463 U.S. at 290, 103 S.Ct. at 3009. Therefore, in applying these factors to Kidder's sentence, the court must keep in mind that the sentence may be overturned only if it is *"grossly* disproportionate to the offense committed." *United States v. Busher*, 817 F.2d 1409, 1415 (9th Cir.1987) (emphasis in original).

 In evaluating Kidder's claim, this court does not write upon a clean slate. Several recent cases have concluded that the minimum sentences contained in 21 U.S.C. § 841 pass constitutional muster under the *Solem* test. *See United States v. Savinovich*, 845 F.2d 834, 839–40 (9th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 369, 102 L.Ed.2d 358 (1988); *United States v. Kinsey*, 843 F.2d 383, 392–93 (9th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2882, 101 L.Ed.2d 916 (1988); *United States v. Solomon*, 848 F.2d 156, 157 (11th Cir.1988); *United States v. Holmes*, 838 F.2d 1175, 1178–79 (11th Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 2829, 100 L.Ed.2d 930 (1988); *see also United States v. Whitehead*, 849 F.2d 849, 860 (4th Cir.) (upholding the mandatory minimum on the grounds that *Solem* does not require proportionality review of any sentence less than life imprisonment without parole), *cert. denied*, —— U.S. ——, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988).[5] After a careful evaluation of each of the *Solem* factors, we conclude that there is little to distinguish Kidder's case from these previous cases.[6]

---

**5.** The Fourth Circuit's approach in *Whitehead* seems plainly incorrect in light of the Supreme Court's observation in *Solem* that "no penalty is *per se* constitutional" and that "a single day in prison may be unconstitutional in some circumstances." 463 U.S. at 290, 103 S.Ct. at 3009. At any rate, the *Whitehead* approach has been im-

plicitly rejected in the Ninth Circuit. *See Busher*, 817 F.2d at 1414–16 (applying *Solem* proportionality analysis to a forfeiture under RICO).

**6.** Kidder asserts that his record in Vietnam is one factor to be considered in deciding whether his sentence is unconstitutionally disproportion-

Accordingly, we hold that Kidder's sentence does not violate the eighth amendment.

2. *Do the minimum sentencing provisions of 21 U.S.C. § 841(b)(1)(B) so constrict the sentencing judge's consideration of a defendant's individual characteristics as to violate due process?*

 Pointing out that the trial judge thought that the required five-year sentence was unduly harsh, Kidder argues that the minimum sentence is unconstitutional because it unduly restricts the sentencing judge's ability to impose an individualized sentence. In support of this assertion, Kidder cites *United States v. Barker*, 771 F.2d 1362, 1365 (9th Cir.1985), which held that a sentencing judge must make "an individualized assessment of a particular defendant's culpability" before imposing a sentence.

Kidder's argument is without merit. An identical claim was squarely rejected in *Holmes*, 838 F.2d at 1177, and in *United States v. Pineda*, 847 F.2d 64, 66 (2d Cir. 1988). In *Holmes*, the defendant was convicted under 21 U.S.C. § 841(b)(1)(B) and was sentenced to the minimum term of five years. The Eleventh Circuit rejected Holmes' due process challenge to his conviction:

> [T]he statute only establishes the minimum and the maximum number of years to which a defendant may be sentenced and in no way circumscribes 21 U.S.C. [§ ] 850, 18 U.S.C. [§ ] 3661, or Fed.R. Crim.Proc. 32(a)(1)(B) and (c); all of

which permit a defendant to present information concerning his background, character and conduct to aid the sentencer in determining the appropriate sentence. Thus, within the congressionally established range for sentences, nothing in section 841(b)(1) restricts the discretion of a sentencing judge in fashioning an individualized sentence in light of the specific facts of the offense and history of the offender.

838 F.2d at 1177. *See also Pineda*, 847 F.2d at 66 (noting that the minimum penalty provisions of 21 U.S.C. § 841 permit a sentencing court to consider aggravating factors in deciding whether to impose a sentence above the statutory minimum, and concluding that the act was therefore consistent with the requirements of *Barker*).[7]

The government correctly notes that Kidder's real objection is not that the trial judge was not able to consider mitigating factors, but that Congress does not permit the judge to consider these factors "to the extent of a sentence of less than five years imprisonment." However, nothing in *Barker* suggests that sentencing judges must be free to impose whatever sentence they believe is appropriate. Indeed, the Supreme Court has recognized that legislatures possess "broad authority . . . in determining the types and limits of punishments for crimes." *Solem*, 463 U.S. at 290, 103 S.Ct. at 3009; *see also Kinsey*, 843 F.2d at 392. *Barker* merely requires that, in choosing a sentence *within* the statutory limits, a trial judge must make an individualized assessment of the defendant's culpa-

---

ate. Although such factors may ordinarily be considered by a trial judge in deciding upon a sentence, there is nothing in *Solem* that suggests that they are relevant to eighth amendment proportionality analysis. *Solem* states that the court should consider the circumstances of the defendant's *crime;* it does not say that courts must examine his or her personal history. *See Solem*, 463 U.S. at 290–94, 103 S.Ct. at 3009–12; *see also Busher*, 817 F.2d at 1415. The eighth amendment does not require that Kidder receive a lower sentence because he is a decorated Vietnam veteran.

7. Similarly, Kidder's citation of *Sumner v. Shuman*, 483 U.S. 66, 107 S.Ct. 2716, 97 L.Ed.2d 56

(1987), is inapposite. *Sumner* declared unconstitutional a mandatory death penalty imposed on murderers who were already serving life terms. The Court concluded that the penalty of death could not be imposed without individual consideration of the appropriateness of the penalty. *Sumner* is distinguishable because it deals with capital punishment—a penalty that, because of its severity, may not be applied without appropriate consideration. In the noncapital context, however, "the scope of judicial discretion with respect to a sentence is subject to congressional control." *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 650, 102 L.Ed.2d 714 (1989).

bility. Therefore, the mandatory minimum sentence does not violate due process.

3. *Are the sentencing classifications in 21 U.S.C. § 841(b)(1)(B) so arbitrary and irrational as to violate due process and equal protection of the laws?*

Kidder argues that the sentencing scheme of 21 U.S.C. § 841 is arbitrary and irrational because the act classifies the required minimum penalties solely on the basis of quantity of the drugs sold, without regard to the purity of the drugs. Kidder notes that, under the statute, someone convicted of possession of five kilograms of "cut" or diluted cocaine that was only one or two percent pure would be subject to a minimum ten-year prison sentence, *see* 21 U.S.C. § 841(b)(1)(A), while someone who was convicted of possessing less than 500 grams of ninety percent pure cocaine would not be subject to any minimum prison term, *see id.* at § 841(b)(1)(C). Kidder argues that it is irrational to impose a harsher sentence in the former case, since the amount of cocaine actually involved is substantially less.

■ We need not decide this issue because Kidder clearly lacks standing to raise it. In *United States v. Zavala–Serra,* 853 F.2d 1512 (9th Cir.1988), the defendant raised an identical challenge to this same statute. The court noted that Zavala had been convicted of possession of 2 kilograms of 86% pure cocaine and concluded that, because the penalty was clearly rational as applied to him, he lacked standing to challenge the fact that the statute did not take purity into account. 853 F.2d at 1517–18. "A defendant cannot claim a statute is unconstitutional in some of its reaches if the statute is constitutional as applied to him." *Id.* at 1517; *see also United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524 (1960). Here, Kidder was convicted of possession of 997 grams of 93% pure cocaine and 979 grams of 88% pure cocaine. Since the act is thus clearly constitutional as applied to him, Kidder may not be heard to argue that it is irrational to impose the same punishment on those who deal in cut cocaine.

■ Kidder also argues that the sentencing scheme is irrational in that it imposes minimum penalties without regard to whether the defendant's role in the distribution of narcotics was central or "peripheral." Because nothing in the record suggests that Kidder's role was peripheral—indeed, he was the source of supply for a substantial proposed drug transaction—Kidder lacks standing to make this claim.

We therefore reject Kidder's claim that the sentence imposed upon him is so irrational as to violate due process and equal protection.

4. *Did the prosecution deny Kidder due process or equal protection by refusing to dismiss Count II of the indictment during plea negotiations?*

■ Kidder argues that the prosecution denied him equal protection of the laws by refusing to dismiss Count II of the indictment during plea negotiations. Kidder asserts that several other defendants in the Western District of Washington have been permitted to "plead around" the mandatory minimum sentence by pleading guilty to conspiracy instead of possession. He argues that this "arbitrary" enforcement violates the equal protection component of the due process clause of the fifth amendment.

Even assuming that Kidder is correct in his assertion that others have been able to "plead around" the mandatory minimum, he has failed to show any constitutional violation. The Supreme Court has emphasized that prosecutors possess wide discretion in deciding "whether or not to prosecute, and what charge to file or bring before a grand jury." *Wayte v. United States,* 470 U.S. 598, 607, 105 S.Ct. 1524, 1530, 84 L.Ed.2d 547 (1985). Indeed, the Court has stated that " 'the conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation' so long as 'the selection was [not] deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' " *Bordenkircher v. Hayes,* 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978) (quoting *Oyler v. Boles,* 368 U.S. 448, 456, 82 S.Ct. 501,

505, 7 L.Ed.2d 446 (1962)). Accordingly, Kidder must show that he was selected for prosecution under the mandatory minimum statute "on the basis of an impermissible ground such as race, religion or exercise of ... constitutional rights." *United States v. Moody*, 778 F.2d 1380, 1386 (9th Cir. 1985), *amended on other grounds*, 791 F.2d 707 (9th Cir.1986). Furthermore, Kidder must show that the selective prosecution was "motivated by a discriminatory *purpose.*" *Wayte*, 470 U.S. at 608, 105 S.Ct. at 1531 (emphasis added).

Kidder's showing falls far short of these standards. Kidder has not shown anything beyond the mere fact that other people who might have been charged under 21 U.S.C. § 841 were not. He has not suggested, much less shown, that he was selected for prosecution on grounds of race, religion, or the exercise of constitutional rights. Kidder has also failed to point to any facts indicating that the government had a discriminatory motive in choosing to prosecute him under § 841. For these reasons, his claim that the statute has been unfairly applied to him, in violation of due process and equal protection, is without merit.

### CONCLUSION

The judgment of the district court is AFFIRMED.