RYMER, J.,
dissenting:
There is no question that homelessness is a serious problem and the plight of the homeless, a cause for serious concern. Yet this does not give us license to expand the narrow limits that, in a “rare type of case,” the Cruel and Unusual Punishment Clause of the Eighth Amendment places on sub *1139 stantive criminal law. The majority sees it differently, concluding that the Eighth Amendment forbids the City of Los Angeles from enforcing an ordinance which makes it unlawful to sit, sleep, or lie on sidewalks. It gets there by cobbling together the views of dissenting and concurring justices, creating a circuit conflict on standing, and overlooking both Supreme Court precedent, and our own, that restrict the substantive component of the Eighth Amendment to crimes not involving an act. I disagree, and therefore dissent, for a number of reasons.
Los Angeles Municipal Code (LAMC) § 41.18(d) does not punish people simply because they are homeless. It targets conduct — sitting, lying or sleeping on city sidewalks — that can be committed by those with homes as well as those without. Although the Supreme Court recognized in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), that there are substantive limits on what may be made criminal and punished as such, both the Court and we have constrained this category of Eighth Amendment violation to persons who are being punished for crimes that do not involve conduct that society has an interest in preventing. See, e.g., Powell v. Texas, 392 U.S. 514, 531-33, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968) (Marshall, J., plurality); United States v. Ayala, 35 F.3d 423, 426 (9th Cir.1994).
Neither the Supreme Court nor any other circuit court of appeals has ever held that conduct derivative of a status may not be criminalized. The majority relies on the dissenting opinions and dicta in the concurring opinion in Powell (which involved a conviction for public drunkenness of an alcoholic who was to some degree compelled to drink), but not even the Powell dissent would go so far as to hold that conduct which is closely related to status may not constitutionally be punished unless the conduct is “a characteristic and involuntary part of the pattern of the [status] as it afflicts” the particular individual. 392 U.S. at 559, n. 2, 88 S.Ct. 2145 (Fortas, J., dissenting). This is not the case with a homeless person who sometimes has shelter and sometimes doesn’t.
Nor, until now, has the Supreme Court or any other circuit court of appeals intimated (let alone held) that status plus a condition which exists on account of discretionary action by someone else is the kind of “involuntary” condition that cannot be criminalized. Here, the majority holds that the Eighth Amendment “prohibits the City from punishing involuntary sitting, lying, or sleeping on public sidewalks that is an unavoidable consequence of being human and homeless without shelter in the City of Los Angeles.” Maj. op. at 1138. In other words, the City cannot penalize the status of being homeless plus the condition of being without shelter that exists by virtue of the City’s failure to provide sufficient housing on any given night. The ramifications of so holding are quite extraordinary. We do not — and should not — immunize from criminal liability those who commit an act as a result of a condition that the government’s failure to provide a benefit has left them in.
Regardless, the challenge should fail even on the majority’s view of the law because Jones has not shown that he was accused of being in an involuntary condition which he had no capacity to change or avoid. The attack on LAMC § 41.18(d) is not facial; it is as applied to Jones and those who join him in this suit. Jones’s theory (embraced by the majority) is that the City’s failure to supply adequate shelter caused the six persons who pursue this action to commit the prohibited act, that is, the act of sleeping, sitting or lying on the streets. However, there is no showing in this case that shelter was unavailable on the night that any of the six was appre *1140 hended. This is not a class action; each of the six must have been injured in fact by enforcement of the ordinance. As no one has made that showing, the claimants both lack standing and lose on the merits. If Jones were not on the streets because he couldn’t find shelter, his conviction cannot have offended the Constitution no matter how broadly the Eighth Amendment is construed.
Finally, Eighth Amendment protections apply to those who are convicted, not to those who are arrested. Even assuming that at least one of the six homeless persons in this action has been convicted and will be prosecuted again, there is no basis for supposing that he will be convicted again. California law provides a defense to conviction under an ordinance such as Los Angeles’s if the homeless person shows that he slept, lay or sat on the streets because of economic forces or inadequate alternatives. See In re Eichorn, 69 Cal.App.4th 382, 389-91, 81 Cal.Rptr.2d 535 (1998). Thus, it cannot be said that any of the six will be subject to punishment for purposes of the Eighth Amendment on account of any involuntary condition. They both lack standing, and lose on the merits, for this reason as well.
Accordingly, I part company with the majority’s expansive construction of the substantive limits on criminality. It exceeds the boundaries set by the Supreme Court on the Robinson limitation, and intrudes into the state’s province to determine the scope of criminal responsibility. I would affirm.
I
Edward Jones and his wife are homeless. Their monthly general relief check is not sufficient to pay for a hotel room on Skid Row for the entire month. No shelter permits a childless couple to stay together. Jones has been cited, but not arrested or convicted, for sleeping on the streets in violation of LAMC § 41.18(d).
Robert Lee Purrie has tried to find shelter in Skid Row and been told that there are no beds available. He was cited for violating LAMC § 41.18(d) but failed to appear, which apparently led to a warrant being issued for his arrest. He was arrested pursuant to the warrant and also charged with violating the ordinance. Purrie states that he was given a suspended sentence on condition that he stay away from the place he was arrested. There is no record of conviction, or any evidence that Purrie was turned away from a shelter the night he was cited.
Patricia and George Vinson have tried to rent rooms in Skid Row hotels and to get into various shelters, but have been unable to find a facility with space they can afford that will allow them to stay together. When they lack money for a motel room, they take the bus to a shelter in South Los Angeles. Occasionally they miss the bus and are forced to sleep on the street. They were cited on one of these occasions, but not arrested or convicted, for violating LAMC § 41.18(d).
Thomas Cash is homeless and disabled. He was residing in a facility on Skid Row provided through the County’s cold-weather voucher program when he was cited for sitting on the sidewalk.
Stanley Barger also is homeless and disabled. He can afford to stay in a hotel for only a few days a month on his general relief allowance; his social security income was cut off when he was arrested for consuming alcohol in violation of his parole terms. He was arrested for sleeping on the street and also on an outstanding warrant. He states he was sentenced to time served, but does not say on which charge. There is no record of conviction.
Jones claims that some 42,000 people are homeless each night in the City of Los *1141 Angeles, with approximately 11,000 living-in the Skid Row area. The number of homeless persons exceeds the number of available shelter beds. Of the 11,000 on Skid Row, approximately 7,000 sleep in a single-room occupancy facility and 2,000 stay in emergency shelter facilities. On any given night, this leaves 2,000 people without shelter.
Jones seeks to enjoin enforcement of LAMC § 41.18(d) between the hours of 9:00 p.m. and 6:30 a.m. The parties brought cross-motions for summary judgment. The district court rejected Jones’s contention that the failure of the City to provide sufficient housing compels the conclusion that homelessness is cognizable as a status. It agreed with Judge Jensen’s analysis in Joyce v. City and County of San Francisco, 846 F.Supp. 843 (N.D.Cal.1994), that status cannot be defined as a function of the discretionary acts of others, and held that even if homelessness were considered a status, criminalizing the acts of sitting, lying, or sleeping on the streets would not be a cognizable violation of the Eighth Amendment. Accordingly, the court granted the City’s motion for summary judgment.
II
The City asserts for the first time on appeal that the homeless persons who pursue this Eighth Amendment action lack standing because they were never convicted of violating the ordinance. It points to Johnson v. City of Dallas, 61 F.3d 442 (5th Cir.1995), where the court held that homeless persons who sought to enjoin enforcement of a Dallas ordinance prohibiting sleeping in public had no standing as none had been convicted, and to Davison v. City of Tucson, 924 F.Supp. 989, 993 (D.Ariz.1996), which similarly held that homeless persons challenging a city resolution to remove them from a location where they had camped lacked standing because “the Eighth Amendment protection against cruel and unusual punishment can only be invoked by persons convicted of crimes.” I agree with the City that our jurisdiction is implicated, and I disagree with the majority that we should be persuaded to reach the merits by Joyce, 846 F.Supp. at 854, or by cases where the court did not even address the question whether there had been convictions. Joyce was a class action in which the plaintiffs alleged injuries to individuals in the putative class that included convictions of “eamping”-related offenses, and neither Church v. City of Huntsville, 30 F.3d 1332, 1339 (11th Cir.1994), nor Pottinger v. City of Miami, 810 F.Supp. 1551, 1559-60 (S.D.Fla.1992), states one way or the other whether plaintiffs had been convicted. I also disagree with the majority’s conclusion that “all that is required for standing is some direct injury — for example, a deprivation of property, such as a fine, or liberty, such as an arrest — based on the plaintiffs violation of the statute,” maj. op. at 1129, because this is an action arising under the Eighth Amendment, where injury comes from cruel and unusual punishment — not under the Due Process Clause, where injury comes from deprivation of a liberty or property interest without due process. Nevertheless, in a case such as this the standing inquiry essentially collapses into the merits, so instead of treating the issue separately as I normally would, I will simply explain why, in my view, there is no basis upon which Jones is entitled to relief.[1]
*1142 III
Jones argues that LAMC § 41.18(d) makes criminal what biology and circumstance make necessary, that is, sitting, lying, and sleeping on the streets. He maintains that the gap between the number of homeless persons in Los Angeles, and the number of available shelter beds, leaves thousands without shelter every night. Jones claims that the situation is particularly acute on Skid Row, where most homeless shelters and services have been centralized. As Jones puts it, so long as there are more homeless people than shelter beds, “the nightly search for shelter will remain a zero-sum game in which many of the homeless, through no fault of their own, will end up breaking the law.” By enforcing the ordinance, Jones contends, the City subjects homeless persons to a cycle of citation, arrest, and punishment for the involuntary and harmless conduct of sitting or lying in the street. Accordingly, he seeks to bring the ordinance “in line with less draconian ordinances in other cities” by barring its enforcement in Skid Row during nighttime hours.
Jones relies on Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), to argue that persons cannot be punished for their status alone. In Robinson, the Court reversed the conviction of a drug addict who had been convicted of violating a California statute that made it a criminal offense for a person to “be addicted to the use of narcotics.” ' The Court observed of this statute, that it
is not one which punishes a person for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration. It is not a law which even purports to provide or require medical treatment. Rather, we deal with a statute which makes the “status” of narcotic addiction a criminal offense, for which the offender may be prosecuted “at any time before he reforms.” California has said that a person can be continuously guilty of this offense, whether or not he has ever used or possessed any narcotics within the State, and whether or not he has been guilty of any antisocial behavior there.
Id. at 666, 82 S.Ct. 1417. The Court noted that narcotic addiction was “an illness which may be contracted innocently or involuntarily,” and held that “a state law which imprisons a person thus afflicted as a criminal, even though he has never touched any narcotic drug within the State or been guilty of any irregular behavior there, inflicts a cruel and unusual punishment. ...” Id. at 667, 82 S.Ct. 1417.
Jones submits that as the City could not expressly criminalize the status of being homeless without offending the Eighth Amendment, it cannot enforce the ordinance when the number of homeless persons exceeds the number of available shelter beds because to do so has the effect of criminalizing homelessness. For this he relies on Pottinger v. City of Miami, 810 F.Supp. 1551 (S.D.Fla.1992). Pottinger was a class action on behalf of 6,000 homeless people living in Miami who alleged that arrests for sleeping or bathing in public, and destruction of their property, violated their rights under the Eighth Amendment. The court held that arresting homeless individuals for harmless, involuntary conduct is cruel and unusual punishment and a violation of their due process rights. Based on the record adduced in that case, it found that being homeless is rarely a choice; it also found that the homeless plaintiffs lacked any place where they could lawfully be and had *1143 no realistic choice but to live in public places because of the unavailability of low-income housing or alternative shelter. In this sense, the court believed that them conduct was involuntary and that being arrested effectively punishes the homeless for being homeless. However, in my view, Pottinger’s extension of the Eighth Amendment to conduct that is derivative of status takes the substantive limits on criminality further than Robinson or its progeny support. See Joyce, 846 F.Supp. at 856-58 (rejecting Pottinger’s rationale as a dubious application of Robinson and Powell as well as principles of federalism).
In Powell v. Texas, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), the successor case to Robinson, the Court affirmed a conviction for being found in a state of intoxication in a public place in violation of state law. Justice Marshall’s plurality opinion rejected Powell’s reliance on Robinson because Powell was not convicted for being a chronic alcoholic but for being in public while drunk on a particular occasion. As he explained:
Robinson so viewed brings this Court but a very small way into the substantive criminal law. And unless Robinson is so viewed it is difficult to see any limiting principle that would serve to prevent this Court from becoming, under the aegis of the Cruel and Unusual Punishment Clause, the ultimate arbiter of the standards of criminal responsibility, in diverse areas of the criminal law, throughout the country.
Id. at 533, 88 S.Ct. 2145 (Marshall, J., plurality). The plurality also rejected the dissent’s interpretation of Robinson— adopted by Jones and the majority here— as precluding the imposition of criminal penalties upon a person for being in a condition he is powerless to change. Rather,
[t]he entire thrust of Robinson’s interpretation of the Cruel and Unusual Punishment Clause is that criminal penalties may be inflicted only if the accused has committed some act, has engaged in some behavior, which society has an interest in preventing, or perhaps in historical common law terms, has committed some actus reus. It thus does not deal with the question of whether certain conduct cannot constitutionally be punished because it is, in some sense, “involuntary” or “occasioned by a compulsion.”
Id. at 533, 88 S.Ct. 2145.
Justice White concurred in the judgment. In his view, if it could not be a crime to have an “irresistible compulsion to use narcotics” in Robinson, then the use of narcotics by an addict must be beyond the reach of the criminal law. Id. at 548-49, 88 S.Ct. 2145 (White, J., concurring in the result). From this it followed to Justice White that the statute under which Powell was convicted should not be applied to a chronic alcoholic who has a compulsion to drink and nowhere but a public place in which to do so. “As applied to [such alcoholics] this statute is in effect a law which bans a single act for which they may not be convicted under the Eighth Amendment — the act of getting drunk.” Id. at 551, 88 S.Ct. 2145. However, Justice White did not believe the conviction offended the Constitution because Powell made no showing that he was unable to stay off the streets on the night he was arrested. Id. at 552-53, 88 S.Ct. 2145.
The Powell dissent opined that a criminal penalty could not be imposed on a person suffering the disease of chronic alcoholism for a condition — being in a state of intoxication in public — which is a characteristic part of the pattern of his disease. Id. at 559, 88 S.Ct. 2145 (Fortas, J., dissenting). Contrary to the plurality, the dissent read Robinson as standing on the principle that “[c]riminal penalties may not be inflicted upon a person for being in a *1144 condition he is powerless to change.” Id. at 567, 88 S.Ct. 2145. Noting that the statute in Powell differed from the statute in Robinson by covering more than mere status (being intoxicated and being found in a public place while in that condition), the dissent nevertheless found the same constitutional defect present as in both cases, the defendant was accused of being “in a condition which he had no capacity to change or avoid.” Id. at 567-68, 88 S.Ct. 2145.
Finally, the Court commented on the purpose of the Cruel and Unusual Punishment Clause, and on Robinson, in Ingraham v. Wright, 430 U.S. 651, 97 S.Ct. 1401, 51 L.Ed.2d 711 (1977). Ingraham involved the use of corporal punishment of students in a public school. “An examination of the history of the Amendment and the decisions of this Court construing the proscription against cruel and unusual punishment confirms that it was designed to protect those convicted of crimes.” Id. at 664, 97 S.Ct. 1401; see also Graham v. Connor, 490 U.S. 386, 392 & n. 6, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) (noting that Judge Friendly’s view that Eighth Amendment protections do not attach until after conviction and sentence “was confirmed by Ingraham”). Put differently, “[t]he primary purpose of [the clause] has always been considered, and properly so, to be directed at the method or kind of punishment imposed for the violation of criminal statutes.... ” Ingraham, 430 U.S. at 667, 97 S.Ct. 1401 (quoting Powell, 392 U.S. at 531-32, 88 S.Ct. 2145 (Marshall, J., plurality)). After surveying its “cruel and unusual punishment” jurisprudence, the Court remarked that
these decisions recognize that the Cruel and Unusual Punishments Clause circumscribes the criminal process in three ways. First, it limits the kinds of punishment that can be imposed on those convicted of crimes; second, it proscribes punishment grossly disproportionate to the severity of the crime; and third, it imposes substantive limits on what can be made criminal and punished as such.
Id. at 667, 97 S.Ct. 1401 (citations omitted). Of the last, or Robinson, limitation, the Court stated: “We have recognized the last limitation as one to be applied sparingly.” Id. (referring to Powell, 392 U.S. at 531-32, 88 S.Ct. 2145).
Our court has considered whether individuals are being punished on account of status rather than conduct several times. In United States v. Ritter, 752 F.2d 435 (1985), the defendant was convicted of possession of cocaine with intent to distribute. He was stopped at a border checkpoint but was not carrying immigration documents. Id. at 436. This led to a search that uncovered drugs, and to a motion to suppress that challenged the constitutionality of a federal statute making it a criminal offense for documented aliens to fail to carry documents. Ritter argued that requiring documents to check his status offended the Eighth Amendment’s substantive limits on what can be made criminal. Id. at 437. Citing Robinson as an example of “the rare type of case in which the clause has been used to limit what may be made criminal,” we held that the statute at issue in Ritter did not come with the purview of “this unusual sort of case.” Id. In doing so, we emphasized the Supreme Court’s admonition that “this particular use of the clause is to be applied sparingly,” and reiterated that “[t]he primary purpose of the clause is directed at the method or kind of punishment imposed for a criminal violation.” Id. at 438 (citing Ingraham, 430 U.S. at 667, 97 S.Ct. 1401).
In United States v. Kidder, 869 F.2d 1328 (9th Cir.1989), a defendant convicted of possession of cocaine with intent to distribute argued that he was being unconstitutionally punished because of his status as a mentally ill drug addict. We understood *1145 his contention to be that his involvement was caused by mental illness, so to imprison him for drug dealing was tantamount to punishing him for being mentally ill. Id. at 1331-32. We concluded that because the statute under which he was convicted punishes a person for the act of possessing illegal drugs with intent to distribute, it does not run afoul of Robinson. Id. at 1332. Kidder also argued that even if he were being punished for his acts rather than his status, the involuntary nature of the acts rendered them immune from criminal punishment. Id. We recognized that this issue was raised in Powell but no majority opinion emerged; however, we declined to decide it because Kidder’s guilty plea waived any argument that his actions were involuntary.[2] Id. at 1332-33.
And in United States v. Ayala, 35 F.3d 423 (9th Cir.1994), the defendant was convicted of illegal re-entry in the United States without permission and within five years of being deported. Relying on Robinson, he argued that the “found in” provision of 28 U.S.C. § 1326 impermissibly punished him for the “status” of being found in the United States. Id. at 425. We thought the reliance misplaced, noting that the “Supreme Court has subsequently limited the applicability of Robinson to crimes that do not involve an actus reus.” Id. at 426 (citing Powell, 392 U.S. at 533, 88 S.Ct. 2145 (Marshall, J., plurality)). As a conviction for being “found in” the United States necessarily requires that a defendant commit the act of re-entering the country without permission within five years of being deported, there was no Eighth Amendment problem.
These cases indicate to me that application of LAMC § 41.18(d) to Jones’s situation is not the “rare type of case” for which the Cruel and Unusual Punishment Clause limits what may be criminalized. Robinson does not apply to criminalization of conduct. Its rationale is that the California statute penalizing addiction failed to criminalize conduct, and this failure is what made it unconstitutional. 370 U.S. at 666, 82 S.Ct. 1417 (“This statute, therefore, is not one which punishes a person for the use of narcotics, for their purchase, sale or possession, or for antisocial or disorderly behavior resulting from their administration.”). The plurality in Poivell interpreted Robinson this way, and in a view that is binding on us now, we previously adopted the plurality’s position as controlling by stating in Ayala that “[t]he Supreme Court has subsequently limited the applicability of Robinson to crimes that do not involve an actus reus.” Ayala, 35 F.3d at 426 (citing Powell, 392 U.S. at 533, 88 S.Ct. 2145 (Marshall, J., plurality)); see also United States v. Parga-Rosas, 238 F.3d 1209, 1212 (9th Cir.2001) (noting that the point of Powell and Ayala is that criminal penalties can be imposed only if the accused “has committed some actus reus”). As the offense here is the act of sleeping, lying or sitting on City streets, Robinson does not apply.[3]
*1146 Also, in the rare case exemplified by Robinson, the status being criminalized is an internal affliction, potentially an innocent or involuntary one. See Robinson, 370 U.S. at 665-67, 82 S.Ct. 1417 (equating a statute that makes the status of addiction criminal with making it a crime for a person to be mentally ill, or a leper, or to be afflicted with a venereal disease, and noting that addiction is an illness that “may be contracted innocently or involuntarily”). Although the majority acknowledges that homelessness is neither a disease nor an innate or immutable characteristic, maj. op. at 1137, it nevertheless holds that Jones, as a homeless individual, is “in a chronic state that may have been ‘contracted innocently or involuntarily.’ ” Id. at 1135. . Being homeless, however, is a transitory state. Some people fall into it, others opt into it. For many, including the homeless persons who pursue this action, it is a status that fluctuates on a daily basis and can change depending upon income and opportunities for shelter. Many are able to escape it altogether. See U.S. Conf. of Mayors, A Status Report on Hunger and Homelessness in America’s Cities 2002 at 312 (indicating that “people remain homeless an average of six months in survey cities”).[4] In addition, the justices in Powell who were troubled by the statute at issue there, which made it a crime to be found intoxicated in public, thought it was problematic because a chronic alcoholic has a compulsion to drink wherever he is. See Powell, 392 U.S. at 549, 88 S.Ct. 2145 (White, J., concurring) (noting that resisting drunkenness and avoiding public places when intoxicated may be impossible for some); id. at 568, 88 S.Ct. 2145 (Fortas, J., dissenting) (noting that like the addict in Robinson, an alcoholic is powerless to avoid drinking to the point of intoxication and once intoxicated, to prevent himself from appearing in public places).
In further contrast to Robinson, where the Court noted that California through its statute “said that a person can be continuously guilty of this offense [being addicted to the use of narcotics], whether or not he has ever used or possessed any narcotics within the State, and whether or not he has been guilty of any antisocial behavior there,” 370 U.S. at 666, 82 S.Ct. 1417, Los Angeles through its ordinance does not purport to say that “a person can be continuously guilty of this offense,” whether or not he has ever slept on a City street. This is important for two reasons: first, because it shows that the statute itself does not suffer the Robinson defect of making the status of being homeless a criminal offense; and second, because there is no evidence that Jones or any of the parties joining with him — including Purrie or Barger, who were convicted of violating LAMC § 41.18(d) — were unable to stay off the sidewalk on the night they were arrested. For this reason, Jones cannot prevail on the evidence presented even if it were open to us to rely on Justice White’s concurring opinion in Powell, which I believe Ayala forecloses. Justice *1147 White ended up concurring in the result because Powell “made no showing that he was unable to stay off the streets on the night in question.” Powell, 392 U.S. at 554, 88 S.Ct. 2145 (White, J., concurring in the result). Despite this, the majority here reasons that unlike Powell, Purrie and Barger made a substantial showing that they are “unable to stay off the streets on the night[s] in question,” because “[a]ll human beings must sit, lie, and sleep, and hence must do these things somewhere. It is undisputed that, for homeless individuals in Skid Row who have no access to private spaces, these acts can only be done in public.” Maj. op. at 1136. This, of course, is simply a conclusion about the usual condition of homeless individuals in general. As Justice White pointed out with respect to Powell, “testimony about his usual condition when drunk is no substitute for evidence about his condition at the time of his arrest.” Powell, 392 U.S. at 553, 88 S.Ct. 2145 (White, J., concurring in the result). The same is true here. Testimony about Jones’s usual condition when homeless is not a surrogate for evidence about his condition at the time he was arrested.
Wholly apart from whatever substantive limits the Eighth Amendment may impose on what can be made criminal and punished as such, the Cruel and Unusual Punishment Clause places no limits on the state’s ability to arrest Jones relies heavily on “mass arrests” of homeless people on Skid Row. However, the Eighth Amendment’s “protections d[o] not attach until after conviction and sentence.” Graham, 490 U.S. at 392 n. 6, 109 S.Ct. 1865. The Court said so in Ingraham: “Eighth Amendment scrutiny is appropriate only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions,” 430 U.S. at 671 n. 40, 97 S.Ct. 1401, and reiterated this position in Graham, 490 U.S. at 392 n. 6, 109 S.Ct. 1865. See also Johnson, 61 F.3d at 445 (finding that plaintiffs who had not been convicted of violating a sleeping in public ordinance lacked standing to challenge it on Eighth Amendment grounds). It is not open to us to back off the rule, or to accept, as the majority here does instead, the view of the dissent in Ingraham that the Court’s rationale was based upon the “distinction between criminal and noncriminal punishment.” Maj. op. at 1128 (quoting 430 U.S. at 687, 97 S.Ct. 1401 (White, J., dissenting)).
In any event, there is a difference between the protection afforded by the Eighth Amendment, and protection afforded by the Fourteenth. Protection against deprivations of life, liberty and property without due process is, of course, the role of the Fourteenth Amendment, not the Eighth. The majority’s analysis of the substantive component of the Eighth Amendment blurs the two. However, the Eighth Amendment does not afford due process protection when a Fourteenth Amendment claim proves unavailing. See Bell v. Wolfish, 441 U.S. 520, 535 n. 16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (“The Court of Appeals properly relied on the Due Process Clause rather than the Eighth Amendment in considering the claims of pretrial detainees.”); id. at 579, 99 S.Ct. 1861 (Stevens, J., dissenting) (“Nor is this an Eighth Amendment Case. That provision ... protects individuals convicted of crimes from punishment that is cruel and unusual. The pretrial detainees ... are innocent men and women who have been convicted of no crimes.”). As Justice White’s concurrence in Powell explains:
I do not question the power of the State to remove a helplessly intoxicated person from a public street, although against his will, and to hold him until he has regained his powers. The person’s own safety and the public interest require this much. A statute such as the *1148 one challenged in this case is constitutional insofar as it authorizes a police officer to arrest any seriously intoxicated person when he is encountered in a public place. Whether such a person may be charged and convicted for violating the statute will depend upon whether he is entitled to the protection of the Eighth Amendment.
Powell, 392 U.S. at 554 n. 5, 88 S.Ct. 2145 (White, J., concurring in the result). Thus the arrests upon which Jones relies do not implicate the Eighth Amendment.
Not only has Jones produced no evidence of present or past Eighth Amendment violations, he has failed to show any likelihood of future violations.[5] Since 1998, California has recognized a necessity-due-to-homelessness defense to ordinances such as LAMC § 41.18(d). See Eichorn, 69 Cal.App.4th at 389-91, 81 Cal.Rptr.2d 535. The defense encompasses the very difficulties that Jones posits here: sleeping on the streets because alternatives were inadequate and economic forces were primarily to blame for his predicament. Id. at 390, 81 Cal.Rptr.2d 535. Jones argues that he and other homeless people are not willing or able to pursue such a defense because the costs of pleading guilty are so low and the risks and challenges of pleading innocent are substantial. But a constitutional violation cannot turn on refusal to employ a defense that prevents conviction. Moreover, defendants who do plead guilty cannot suffer Eighth Amendment harm, because the guilty plea “is an admission of each and every element required to establish the offense” and thus “constitutes an admission ... [of] the requisite culpable intent” — that is, the voluntary choice to sleep on the street and the absence of an unavoidable compulsion to do so. See Kidder, 869 F.2d at 1332-33.
As the- Eighth Amendment does not forbid arrests, the injunction sought by Jones extends beyond what would be necessary to provide complete relief even if convictions under the ordinance were unconstitutional. An injunction “should be no more burdensome to the defendant than [is] necessary to provide complete relief to the plaintiffs.” Califano v. Yamasaki, 442 U.S. 682, 702, 99 S.Ct. 2545, 61 L.Ed.2d 176 (1979). Here, there is no evidence of Eighth Amendment harm to any of the six homeless persons who prosecute this action and equitable relief cannot be based on alleged injuries to others. Hodgers-Durgin v. de la Vina, 199 F.3d 1037, 1045 (9th Cir.1999) (en banc). Therefore, the record does not support the relief sought, even under Justice White’s concurrence in Powell. Regardless, as a matter of constitutional law, the Eighth Amendment could at most entitle Jones to an injunction forbidding punishment of a homeless person under the ordinance when he demonstrates a necessity defense; however, I would decline to accord any such relief as it would entail “intrusive and unworkable” federal oversight of state court proceedings. As the Supreme Court explained in O’Shea v. Littleton, 414 U.S. 488, 94 S.Ct. 669, 38 L.Ed.2d 674 (1974), such an injunction would not “strike down a single state statute, either on its face or as applied[, nor] enjoin any criminal prosecutions that might be brought under a challenged criminal law,” but rather would be “aimed at controlling or preventing the occurrence of specific events that might take place in the course of future state criminal trials.” Id. at 500, 94 S.Ct. 669. This would run afoul of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and related cases. So, too, would an injunction requiring state courts to permit and to apply the *1149 Eichom defense. The proper procedure for homeless people to protect their rights would be to plead “not guilty and then to challenge the constitutionality” of their conviction, either through direct appeal or collateral review, in the event their necessity defense was rejected by the court. See Kidder, 869 F.2d at 1333.
As the majority’s opinion seems to me contrary to the Supreme Court’s instruction to apply Robinson sparingly, and instead applies it expansively, I dissent. I believe the district court correctly concluded that the substantive limits on what can be made criminal and punished as such do not extend to an ordinance that prohibits the acts of sleeping, sitting or lying on City streets. Accordingly, I would affirm.

. In this connection, we noted that "[t]he proper procedure to raise this sort of claim would have been for Kidder to have pleaded not guilty and then to challenge the constitutionality of the [statute]. Having pleaded guilty, however, Kidder may not now claim that his actions were really involuntary and thus not constitutionally susceptible to punishment.” Kidder, 869 F.2d at 1333.

. Neither of the two 1969 district court opinions cited by the majority, maj. op. at 1137, in support of the proposition that the Eighth Amendment forbids criminalizing conduct derivative of status, Goldman v. Knecht, 295 F.Supp. 897 (D.Colo.1969); Wheeler v. Goodman, 306 F.Supp. 58 (W.D.N.C.1969), vacated on other grounds by 401 U.S. 987, 91 S.Ct. 1219, 28 L.Ed.2d 524 (1971), is to the contrary. In fact, in both cases the court struck down the statute at issue for criminalizing status, not conduct, explicitly recognizing that there would have been no trouble had the *1146 statutes instead criminalized conduct. Goldman, 295 F.Supp. at 908; Wheeler, 306 F.Supp. at 64.

. This is the only study in the record (others referred to by the majority are not), and it does not indicate that Los Angeles was among the cities surveyed. However, there is no reason to believe that the statistics aren't applicable to Los Angeles as well. See, e.g., Daniel Flaming, et ah, Homeless in LA: Final Research Report for the 10-Year Plan to End Homelessness in Los Angeles County at 72 (Sept.2004) (finding that in a given year in Los Angeles less than ten percent of the homeless population remained homeless for more than six months), available ai http://www.bringlahome.org/docs/HILA — Final.PDF. (This study is not part of the record, either.)

. This, too, calls into question the plaintiffs' standing. See Thomas v. Anchorage Equal Rights Comm’n, 220 F.3d 1134, 1139-41 (9th Cir.2000) (en banc).